



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 7, 2021**

**United States Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FLEXIBLE FUNDING LTD. LIABILITY CO., *et al.*,[1] | § § § | Case No. 21-42215-11-mxm |
| | § | |
| Debtors. | § | (Jointly Administered) |

**THIRD INTERIM ORDER GRANTING DEBTORS' EMERGENCY MOTION
FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING
THE USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

On this day the Court considered the *Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. 5 in each case] (the "Motion")[1] filed by Instapay Flexible, LLC ("Instapay") and Flexible Funding Ltd. Liability Co. ("Flexible", and together with Instapay, the "Debtors").[2] Having reviewed

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Flexible Funding Ltd. Liability Co. (4495) and Instapay Flexible, LLC (7648).

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Motion.

1

the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that relief is necessary to avoid immediate and irreparable harm; and based upon the record, the representations of counsel, and the evidence presented during the hearing on Motion, the Court hereby finds:

On September 19, 2021 (the "Petition Dates"), the Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in this Court. The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Code.

This Court has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

The Debtors assert that they will suffer irreparable and immediate harm if they are not granted the relief herein. The Debtors further assert that an immediate and critical need exists for the Debtors to use funds in order to continue the operation of their businesses and that, without such funds, the Debtors will not be able to fund borrower accounts, pay their payroll and other direct operating expenses and obtain goods and services needed to carry on their businesses during this sensitive period in a manner that will avoid irreparable harm to the Debtors' estates. The Debtors assert that, at this time, the Debtors' ability to use Cash Collateral is vital to their borrowers, the confidence of the Debtors' vendors and suppliers of goods and services, and to the preservation and maintenance of the going concern value of the Debtors' estates.

The Court conducted expedited hearings on the Motion on September 20, 2021 and September 23, 2021. The Court granted the Motion on an interim basis pursuant to the *Interim Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* (the "First Interim Order") [Docket No. 14] entered on September 21, 2021, and pursuant to the *Second Interim Order Granting Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral*

*and Granting Adequate Protection* (the "Second Interim Order") [Docket No. 41] entered on September 23, 2021.  Pursuant to the First Interim Order, the Debtors were authorized to use Cash Collateral from the Petition Date through September 22, 2021, in an amount not to exceed $15 million for the sole purpose of funding borrower accounts.  Pursuant to the Second Interim Order, the Debtors were authorized to use Cash Collateral through October 9, 2021 in accordance with the terms of the Second Interim Order.

Good cause has been shown for the entry of this Order.  The Court finds that the notice of the Motion and the Hearing on the Motion was sufficient under the circumstances.  Entry of this Order is justified and appropriate under the circumstances.  Entry of this Order is in the best interest of the Debtors' estates.

Without prejudice to the rights of any other party, including any subsequently appointed trustee, the Debtors, on their behalf and on behalf of their estates, permanently and irrevocably admit, stipulate, acknowledge and agree as follows (collectively, the "Stipulations"):

(i) As of the Petition Date, the Debtors were parties to (i) that certain Credit Agreement, dated as of December 19, 2019 (as amended by that certain First Amendment to Credit Agreement dated as of September 30, 2020, as amended by that certain Second Amendment to Credit Agreement dated as of April 1, 2021, and as otherwise amended, restated, supplemented and/or modified) by and among the Debtors as borrowers, certain subsidiaries of the Debtors from time to time, the guarantors from time to time party thereto, Umpqua Bank as administrative agent (in such capacity, the "Agent"), and the lenders from time to time party thereto (collectively the "Lenders," and together with the Agent, the "Pre-Petition Secured Parties"); (ii) that certain Amended and Restated Pledge and Security Agreement, dated as of December 19, 2019, by and among the Debtors and other persons party thereto from time to time, as grantors, and the Agent; and (iii) those Security Agreements and Financing Statements for the benefit of the Agent (such documents in (i)-(iii) of this sentence, collectively with all other related loan documents, agreements, financing statements, deposit account control agreements, security documents, or instruments executed in connection therewith, and in each case as amended, restated, modified or supplemented prior to the Petition Date, the "Pre-Petition Loan Documents"), pursuant to which the Pre-Petition Secured Parties provided a revolving credit line to the Debtors in an aggregate original principal amount outstanding not to exceed $100,000,000.00.

3

(ii)   Computed as of September 20, 2021, the Debtors are liable to the Pre-Petition Secured Parties in the aggregate principal amount of at least $77,778,666.87, plus any and all interest, fees, costs, repayment premiums, monthly payments, expenses, charges, and other claims, debts, or obligations of the Debtors to the Pre-Petition Secured Parties as of the Petition Date under the Pre-Petition Loan Documents and applicable law(the "<u>Pre-Petition Indebtedness</u>"), plus all post-Petition Date interest, fees, costs, repayment premiums, monthly payments, and charges allowed to the Pre-Petition Secured Parties on such claim pursuant to Bankruptcy Code section 506(b).

(iii)  As security for repayment of the Pre-Petition Indebtedness, the Agent, on behalf of itself and the other Pre-Petition Secured Parties, holds valid, senior, perfected, binding, non-avoidable, and enforceable liens (the "<u>Pre-Petition Liens</u>") on and security interests in all of the collateral as is specifically set forth in and described in the various Pre-Petition Loan Documents, which include substantially all of the tangible and intangible personal property assets and real property assets of the Debtors as of the Petition Date and all products and proceeds thereof (collectively, the "<u>Pre-Petition Collateral</u>").

(iv)   (a) the Pre-Petition Indebtedness is due and owing, and is a legally binding and enforceable obligation of each of the Debtors; (b) the Pre-Petition Loan Documents are valid and enforceable against the Debtors in accordance with their terms and admissible in these Bankruptcy Cases for all purposes; and (c) the Pre-Petition Liens of the Agent in, to, and against all of the Pre-Petition Collateral are valid, enforceable and properly perfected, and are not subject to avoidance under any state or federal law.

(v)    (a) the filing of these Bankruptcy Cases has accelerated, to the extent not previously accelerated, the maturity of the Pre-Petition Indebtedness for all purposes, including in these Bankruptcy Cases and in connection with the Pre-Petition Secured Parties' enforcement of their respective rights and remedies under the Pre-Petition Loan Documents and applicable law; (b) no payments or other transfers made by or on behalf of the Debtors to the Pre-Petition Secured Parties prior to the Petition Date are or shall be avoidable or recoverable from any of the Pre-Petition Secured Parties under any section of the Bankruptcy Code, any other federal, state, or other applicable law, or otherwise; and (c) from and after the Petition Date, neither the Agent nor the Lenders shall have any obligation to lend or advance funds to the Debtors or their estates.

(vi)   The Pre-Petition Collateral includes all cash, cash proceeds and other cash equivalents of any of the Debtors, and all cash and cash equivalent proceeds of the Pre-Petition Collateral, wherever located, including (i) any cash in deposit accounts of the Debtors, and (ii) any income, proceeds, products, rents, or profits of the Pre-Petition Collateral or otherwise, constitutes cash collateral of the Debtors within the meaning of 11 U.S.C. §§ 363(a) and 552(b), including all such cash in which the Debtors will obtain an interest during these Bankruptcy Cases (the "<u>Cash Collateral</u>").

      The Cash Collateral also serves as security for repayment of the Pre-Petition Indebtedness.

(vii) The Debtors will maintain bank accounts in accordance with the Interim and Final Orders granting *Debtors' Expedited Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Maintain Existing Client Loan And Factoring Agreements Including Honoring Certain Prepetition Obligations Related Thereto, and (ii) Granting Related Relief.*

IT IS THEREFORE ORDERED AND ADJUDGED as follows:

1. **Use of Cash Collateral**.  Subject to the terms of this Order, the Debtors are hereby authorized to use Cash Collateral during the period (the "Budget Period") beginning October 10, 2021 through November 6, 2021, for the purpose of funding borrower accounts.  Subject to the terms of this Order, the Debtors are hereby authorized to use Cash Collateral for the remainder of the week ending October 9, 2021 and during the Budget Period for all other purposes (collectively, "Non-Funding Disbursements") only in the amounts and for the expenses and disbursements set forth in the Budget attached hereto as **Exhibit A**, subject to the Budget Variance (as defined below).  The Debtors shall not use Cash Collateral for Non-Funding Disbursements in an amount that exceeds (a)"Total Operating Costs" by more than ten percent (10%) determined on a total disbursements cumulative basis for the Budget Period, or (b) the budgeted amount for each line-item expense by more than fifteen percent (15%) determined on a cumulative basis for the Budget Period (the "Budget Variance").  The Debtors shall pay the Lenders' interest payment in accordance with the Budget.

2. **Replacement Liens**.  Except as otherwise provided herein, as adequate protection to the Lenders for the Debtors' use of Cash Collateral as permitted herein, to the extent that the Debtors' use of Cash Collateral results in a diminution in value of the Lenders' interest in such Lender's Prepetition Collateral as of the Petition Date, the Lenders are granted a replacement lien ("Replacement Lien") in the Debtors' assets that serve as collateral under each

Lenders' applicable loan documents, in the same order of priority that existed as of the Petition Date (the "Replacement Collateral").

3. **No Lien Upon Avoidance Actions**. Notwithstanding anything herein to the contrary, the Replacement Lien does not extend to the Debtors' transfer or lien avoidance rights and claims under Sections 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code.

4. **Adequate Protection – Superpriority Administrative Claim.** As additional partial adequate protection for the Debtors' use of Cash Collateral, to the extent of any diminution in value and a failure of the other adequate protection provided by this Order, the Lenders shall have an allowed superpriority administrative expense claim in these cases and any successor case as provided in and to the fullest extent allowed by Sections 503(b) and 507(b) of the Bankruptcy Code (the "Superpriority Claim").

5. **Fees, Costs, and Expenses of Pre-Petition Secured Parties.** During the Bankruptcy Cases, as additional adequate protection, all fees, costs, and expenses, including, without limitation, attorneys' fees and expenses and financial advisors' fees and expenses, if any, due at any time to the Pre-Petition Secured Parties to the extent permitted under the Pre-Petition Loan Documents that are incurred as a result of or in way related to these Bankruptcy Cases (collectively, the "Pre-Petition Secured Parties' Costs"), may be charged by the Pre-Petition Secured Parties and shall be paid by the Debtors out of the Cash Collateral, provided that the Debtors, the US Trustee or any Committee may petition the Court to determine the reasonableness of such Pre-Petition Secured Parties' Costs, and provided that such Pre-Petition Secured Parties' Costs shall not be considered a Budget item and shall not be included in determining the Budget Variance. The Debtors are hereby authorized to pay such Pre-Petition Secured Parties' Costs without the Agent or the Lenders, or the Agent's or the Lenders' counsel, having to file any further application with the Bankruptcy Court for approval, allowance, or payment. Subject to the terms of this Order, any such Pre-Petition Secured Parties' Costs that constitute fees and expenses incurred by any professional retained by the Pre-Petition Secured

Parties shall be paid within ten (10) calendar days of delivery of a summary invoice to counsel for the Debtors, the US Trustee and any Committee, unless prior to the end of such period, the Debtors, the US Trustee or any Committee file a motion to determine the reasonableness of such Pre-Petition Secured Parties' Costs. Such summary invoice may be redacted for privilege as determined by the Pre-Petition Secured Parties; provided, however, that any redacted fee statements shall retain all privileges irrespective of any disclosure of any privileged matter, and any such disclosure shall be deemed inadvertent for all purposes and deemed stricken from any record in these Bankruptcy Cases or otherwise.

6. **Carve-Out.** Notwithstanding anything herein to the contrary, the Replacement Lien is subject and subordinate to a carve-out of funds (the "Carve Out") for all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to Section 1930(a) of Title 28, United States Code.

7. **Perfection of Liens**. The Replacement Lien is, and shall be, valid, perfected, enforceable and effective as of the Petition Date without the need for any further action by the Debtors, the Lenders, and the Agent, or the necessity of execution or filing of any instruments or agreements. Notwithstanding the foregoing, this Order shall be deemed a security agreement and may be filed as a financing statement and the Debtors shall execute and deliver such notes, security agreements, assignments, financing statements and other documents that the Agent shall reasonably request to further evidence the liens and security interests granted hereby.

8. **Survival**. The terms and provisions of this Order inure to the benefit of, and are binding upon, the Debtors, the Lenders, and creditors of the Debtors, and their respective successors and assigns, including, without limitation, any trustee or legal representative of the Debtors appointed in this case or in any superseding case under Chapter 7 of the Code. This Order is immediately valid and fully effective upon entry by this Court.

9. **No Waiver.** Nothing in this Order shall prejudice or waive the right of any other party to contest the amount, validity, or avoidability of any the Lenders' claims and security

interests, or prejudice or waive the right of the Lenders to object or contest the further use of Cash Collateral after the Budget Period.

10. **Notice of Final Hearing on Use of Cash Collateral**. A final hearing on the Motion will be held on subsequent notice. The Debtors shall serve a notice of the final hearing on (a) the Office of the U.S. Trustee; (b) the Lenders, or upon counsel if known; (c) the twenty largest unsecured creditors for each Debtor, and (d) all parties requesting notice in this case.

11. **Reporting**. During the Budget Period, the Debtors shall provide the Lenders and the Office of the United States Trustee with daily reports in the same forms as provided under each Lenders' respective loan documents; provided, however, that this requirement shall not be construed to restrict the Debtors' use of Cash Collateral, which shall be governed by the terms of this Order. On or before Thursday of each week during the Budget Period, the Debtors shall additionally provide to the Agent (a) a variance report on a cumulative and line-item basis showing budget-to-actual expenses for the immediately prior week; and (b) an Equity Cushion Analysis similar in form to Exhibits proffered by the Debtors during hearings on the Motion.

12. **Collateral Audit.** The Agent shall be entitled to conduct a collateral audit in accordance with applicable loan documents, provided that such collateral audit is conducted at a mutually agreeable time, and further provided that such audit will not unduly interfere with the Debtors' operations and efforts to conduct a section 363 sale of their assets.

13. **Milestones**: The Debtors' use of cash collateral is conditioned and shall be an Event of Default (as defined below) unless the Debtors (a) pursue a sale of substantially all of the Debtors' assets (a "Sale Transaction") and separately and simultaneously by motion in accordance with the applicable milestones and (b) accomplish each of the following requirements by the applicable date set forth below (the "Milestones"):

   a. On or before 45 days after the Petition Date, the Debtors have obtained entry by this Court of an order (the "Bid Procedures Order")  approving Bid Procedures and scheduling a date for hearing to approve a Sale Transaction.
   b. On or before November 15, 2021, the Debtors have commenced the auction (the "Auction") contemplated by the Bid Procedures Order.

    c. On or before ten (10) business days after the Auction, subject to the Court's availability, the Debtors have obtained an entry by this Court of an order approving a Sale Transaction (the "Sale Order").

14. The Debtors covenant and agree that they will use their best efforts to comply with each of the Milestones. Each of the Milestones may be extended or waived in writing by the Agent, as determined by the Agent. The Debtors shall promptly file with this Court a notice of any such extension or waiver.

15. **Events of Default**. The following shall constitute events of default under this Order ("Events of Default"):

    a. If the Debtors' actual operating disbursements under the Budget exceed the amounts set forth in the Budget by more than the Budget Variance for the Budget Period without the prior written consent of the Agent or further authority from the Court;

    b. If the Debtors pay obligations not shown on the Budget without the prior written consent of the Agent or further authority from the Court;

    c. The Debtors fail to timely provide the information required under Paragraph 11 of this Order;

    d. If a trustee or examiner, with authority to affect the operation of the Debtors' businesses, is appointed without the Agent's consent;

    e. If any of these Bankruptcy Cases is converted to a case under chapter 7 of the United States Bankruptcy Code or dismissed;

    f. If the Debtors violate or breach any material term or obligation under this Order;

    g. If any security interest, lien, or encumbrance is granted that is *pari passu* with or senior to any lien, security interest, or claim of the Pre-Petition Secured Parties (including the Replacement Lien and the Superpriority Claim), including, subject to entry of the Final Order, any surcharge of the Pre-Petition Collateral or Cash Collateral pursuant to Bankruptcy Code section 506(c); and/or

    h. If the Debtors fail to timely meet the Milestones required under Paragraph 13 of this Order.

16. **Remedies Upon Default**. Upon the occurrence of an Event of Default or breach by the Debtors under this Order with respect to Paragraph 15(a)-(h), then in the event the Agent intends to declare a default under the terms of this Order, the Agent shall first give written notice, stating with specificity the nature of the alleged Event of Default to: (a) the Debtors; (b) the Debtors' bankruptcy counsel, (c) counsel for any official committee of unsecured creditors (the "Committee") appointed in the Chapter 11 Cases (if any), and (d) counsel for the U.S. Trustee (which notice may be given by electronic transmission, the automatic stay being deemed lifted for

such purpose) (the "Default Notice"). With respect to an Event of Default as to which a Default Notice has been delivered by the Agent in accordance with this Interim Order, the Debtors and, if applicable, the Committee, shall have five (5) business days from the receipt of the Default Notice to cure the alleged Event of Default (the "Cure Period"). If such Event of Default has not been cured during the Cure Period, at any time following expiration of the Cure Period, the Agent may file a pleading stating with specificity the nature of the Event of Default that was not cured or otherwise remains outstanding ("Agent Default Motion") and the Agent shall be entitled to an emergency hearing on no later than five (5) business days' prior notice via email and ECF upon the Debtors, Debtors' counsel, counsel for the Committee (if any), and the US Trustee to seek Court approval to exercise its rights and remedies under the Pre-Petition Loan Documents, modify or terminate the automatic stay under 11 U.S.C. § 362 or otherwise seek relief from the Court. Nothing in this Order shall preclude the Debtors from filing an Emergency Motion to use Cash Collateral or the Pre-Petition Secured Parties' right to oppose the same.

17. **Blocked Cash Collateral Account.** On or before the first business day following the end of each week during the Budget Period, the Debtors shall cause all Cash Collateral in excess of $9 million (as measured each Monday during the Budget Period with the understanding that refunds due to third parties shall not be considered Cash Collateral) to be transferred to a blocked account maintained at Umpqua Bank. To the extent the Debtors require use of Cash Collateral in excess of $9 million (the "Cash Collateral Cap") during the Budget Period, the Debtors may request use of additional funds from the Agent on a case-by-case basis, without the need of further Court approval during the Budget Period; provided, however, (i) the Agent's consent to the use of additional Cash Collateral shall not be unreasonably withheld or delayed, with such consent being deemed unreasonably withheld if the Debtors demonstrate that they have received funding requests or are obligated to refund borrower overpayments in excess of available funds; (ii) the Debtors and the Agent will file a joint stipulation reflecting any use of additional funds exceeding the Cash Collateral Cap; and (iii) nothing in this Order prevents the Debtors from seeking authority

from the Court on an emergency basis to use funds over the Cash Collateral Cap during the Budget Period.

18.     The Debtors have established that the relief granted herein is necessary to avoid immediate and irreparable harm as required by Bankruptcy Rules 4001(b)(2) and 6003.

19.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

### END OF ORDER ###

L:\JPROSTOK\Flexible Funding (C11) #6264\Pleadings\Third Interim Cash Collateral Order FP version 10.6.2 (Final.rev).docx

# Exhibit "A"

**Cash Flow Forecast**

| | Week Ending: | Actual 1 9/25/2021 | Actual 2 10/2/2021 | Projected 3 10/9/2021 | Projected 4 10/16/2021 | Projected 5 10/23/2021 | Projected 6 10/30/2021 | Projected 7 11/6/2021 | 7-Week Total |
|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | $428,510 | $447,403 | $339,231 | $339,231 | $339,231 | $339,231 | $339,231 | $2,424,615 |
| **Operating Costs** | | | | | | | | | |
| Bank and transaction fees | | $1,272 | $856 | $6,954 | $6,954 | $6,954 | $6,954 | $6,954 | $36,895 |
| Credit Reports | | - | - | 15,968 | - | - | - | 15,968 | 31,936 |
| Marketing & Promotion (Commissions) | | - | 4,424 | - | 46,830 | - | - | - | 51,254 |
| Occupancy | | 700 | - | 13,320 | - | - | 700 | 13,320 | 28,040 |
| Office and administration | | 2,957 | (26) | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 77,932 |
| Outside Services | | 5,783 | - | 4,000 | 17,307 | 22,000 | - | - | 49,091 |
| Personnel | | 129,137 | 76,807 | 114,075 | 142,024 | 82,481 | 82,481 | 82,481 | 709,486 |
| Legal & Professional | | 61,252 | - | - | - | - | - | - | 61,252 |
| Software | | 5,444 | - | 6,108 | 6,108 | 6,108 | 6,108 | 6,108 | 35,984 |
| Taxes and permits | | - | - | 4,001 | 4,001 | 4,001 | 4,001 | 4,001 | 20,005 |
| Travel | | 16,450 | 2,610 | 6,000 | 25,000 | 25,000 | 17,000 | 17,000 | 109,060 |
| ABL Interest Expense | | - | - | 102,487 | - | - | - | 273,823 | 376,310 |
| Secured Sub Debt Interest Expense | | - | 173,667 | - | - | - | - | 63,678 | 237,344 |
| Receiver Fees & Expenses | | - | - | - | 46,225 | 46,225 | 46,225 | 46,225 | 184,900 |
| **Total Operating Costs** | | $222,995 | $258,338 | $287,913 | $309,449 | $207,769 | $178,469 | $544,557 | $2,009,490 |
| **Total BK & Other Costs** | | | | | | | | | |
| Retention Agreements | | - | - | - | - | - | - | - | - |
| Professionals | | - | - | - | - | - | - | - | - |
| **Total BK & Other** | | - | - | - | - | - | - | - | - |
| **Weekly Cash Flow** | | $205,515 | $189,065 | $51,318 | $29,782 | $131,462 | $160,762 | ($205,327) | $415,125 |