Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK LLP
777 Main St., Suite 1550
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
llankford@forsheyprostok.com
dross@forsheyprostok.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FLEXIBLE FUNDING LTD. LIABILITY CO., *et al.*,[1] | § | Case No. 21-42215-11-mxm |
| | § | (Jointly Administered) |
| | § | |
| Debtors. | § | **Emergency Hearing Requested** |
| | § | |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING
THE ASSUMPTION, SALE, AND ASSIGNMENT OF THE ILINK ACCOUNT TO ECAPITAL**

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

COME NOW Instapay Flexible, LLC ("Instapay") and Flexible Funding Ltd. Liability Co. ("Flexible", and with Instapay, the "Debtors" or the "Companies"), as debtors and debtors in possession, and file this *Emergency Motion for Entry of an Order Authorizing the Assumption, Sale, and Assignment of the iLink Account to eCapital* (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Flexible Funding Ltd. Liability Co. (4495) and Instapay Flexible, LLC (7648).

case and all related matters have been referred to this Court pursuant to 28 U.S.C. § 157. This Motion constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**A.**   **Procedural Background**

2.        On September 19, 2021 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

3.        The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in these cases.

4.        On September 20, 2021, the Court entered its *Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing Joint Administration of Chapter 11 Cases* [Docket No. 13] requiring all orders, pleadings, papers, and documents to be filed in the Flexible chapter 11 case and establishing case no. 21-42215-11-mxm as the lead case in these matters.

**B.**   **Flexible's iLink Account and the Proposed Sale and Assignment Thereof**

5.        Flexible is in the business of providing accounts receivable financing to individuals and firms engaged in the staffing industry.

6.        Flexible has an accounts receivable financing agreement (the "iLink Financing Agreement") with iLink Business Management, Inc. ("iLink") to provide factoring and other services (the "iLink Account"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**. Flexible would like to sell and assign the iLink Account to another factoring company, eCapital Commercial Finance Corp. ("eCapital") in a transaction in which eCapital will also assume iLink's duties under the iLink Agreement (such transaction being the "iLink Assignment").

7.        The basic terms of the iLink Assignment are these:

    a.   eCapital will purchase from Flexible (i) all loans and related indebtedness owing by iLink to Flexible under the iLink Agreement (the "Loans") and (ii) all

accounts (as defined in Uniform Commercial Code Section 9-102(a)(2)) that have been purchased or otherwise acquired by Assignor from iLink pursuant to the iLink Financing Agreement (collectively, the "Accounts").

b. In exchange, eCapital will pay the Flexible estate the single purchase price of $7,395,000 (the "Purchase Price"). The Purchase Price will consist of (i) an immediate cash payment of $6,395,000 and (ii) an eCapital promissory note in the face amount of $1,000,000, payable in 24 consecutive equal monthly installments, without interest.

c. As part of the iLink Assignment, eCapital will also assume Flexible's duties under the iLink Financing Agreement.

8.     The Debtors believe the iLink Assignment will benefit the Flexible estate because by assigning the iLink Account credit to eCapital the Debtors will increase the value of the Flexible estate and have extra cash to better fund its current and future obligations. On the same note, prepetition in the Debtors' ordinary course, Flexible sent notice on August 26, 2021 asking iLink to find another funder due to the Debtors' desire to free up funding for other clients and customers.

9.     eCapital has offered to purchase the iLink Account from Flexible for an immediate full payment of the outstanding revolving lines of credit ("RLOC") with a guaranteed payoff of the over-advanced portion in full over twenty-four (24) months.

10.     eCapital and the Debtors would like to close on this proposed deal as soon as possible so that eCapital can acquire the entire credit, with the existing over-advance, and begin managing it as soon as possible.

11.     The Debtors believe that this action is within its ordinary course of business. However, out of an abundance of caution, are seeking entry of an order authorizing the assumption and assignment.

## RELIEF REQUESTED

12.     By this Motion, the Debtors request that the Court enter an Order authorizing

Flexible to assume and assign the iLink Account to eCapital on the terms set forth above pursuant

to section 365 of the Bankruptcy Code.  The Debtors further request that the Court waive the

fourteen-day stay provided by FED. R. BANKR. P. 6004(h) so that the assumption and assignment

of the iLink Account may be consummated immediately upon the entry of an order granting this

Motion.

## BASIS FOR RELIEF

13.     Pursuant to section 105(a) of the Bankruptcy Code,[2] a bankruptcy court "may

issue any order, process or judgment that is necessary or appropriate to carry out the provisions

of [the Bankruptcy Code]."  *See* 11 U.S.C. § 105(a).  Section 363(b)(1) provides, "[t]he trustee,

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1).

14.     The proposed use, sale or lease of property of the estate may be approved under

Bankruptcy Code § 363(b) if it is supported by sound business justification.  *See e.g.,*

*Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re*

*Continental Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or

trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be

some articulated business justification for using, selling, or leasing the property outside the

ordinary course of business."); *see also In re Crutcher Resources Corp.*, 72 B.R. 628, 631

(Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a §

363(b) sale of property of the estate other than in the ordinary course of business, but the

movant must articulate some business justification for the sale."); *In re Terrace Gardens Park*

*Partnership*, 96 B.R. 707, 714 (Bankr. W.D. Tex.1989).  In reviewing a proposed sale of assets,

---

[2] 11 U.S.C. §§ 101–1532.

a bankruptcy court should give deference to the business judgment of a debtor in possession. *See Esposito v. Title Ins. Co. (In re Fernwood Mkts.)*, 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987).

15.     The Debtors have determined in the sound exercise of their business judgment that the sale of the iLink Account is in the best interest of Flexible's estate and creditors.  The Debtors have determined that Flexible has substantial equity in the iLink Account and no longer needs the iLink Account in connection with its business operations and the goals of these bankruptcy cases.  As a result, the Debtors have concluded that the sale of the iLink Account will maximize the value of Flexible's estate and will be in the best interests of its creditors as the proposed sale will provide Flexible with a quick infusion of working capital to fund other customers. The terms of the sale were negotiated at arm's length, and the Debtors believe that the proposed purchase price for the iLink Account is reasonable and represents the fair market value thereof.

16.     Pursuant to Bankruptcy Code § 363(f), a debtor may sell property free and clear of all liens, claims and encumbrances if (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (ii) the lienholder or claimholder consents; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is a bona fide dispute; or (v) the lienholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  *See* 11 U.S.C. § 363(f).  These five conditions are written in the disjunctive, permitting the sale of estate assets upon the satisfaction of any one of the five conditions, including consent of the lienholders.  *See Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (stating that a trustee may sell property of the estate for purposes other than in the ordinary course of business free and clear of all existing liens and encumbrances provided that any one of the conditions of § 363(f) are met); *In re Taxi Holders, Inc.*, 307 B.R. 525, 528-29 (Bankr. E.D. Va. 2004).  The Debtors are unaware of any liens, claims, or encumbrances on the iLink Account.  However, in the event a party asserts a lien, claim, or interest in the iLink Account,

the Debtors reserve the right to request that the iLink Account be sold free and clear of any such lien, claim, or interest at the hearing on this Motion.

17.     Section 365(a) and (b) of the Bankruptcy Code authorize a debtor-in-possession to assume executory contracts or unexpired leases subject to the court's approval and requires such debtor-in-possession to satisfy certain requirements at the time of assumption. Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). A debtor-in-possession's decision to assume or reject an executory contract will generally be approved if it is shown to be an exercise of reasonable business judgment. *Official Comm. of Unsecured Creditors v. Potomac Elec. Power Co. (In re Mirant Corp.),* 378 F.3d 511, 526 (5th Cir. 2004); *Lifemark Hospitals, Inc. v. Liljeberg Enters. (In re Liljeberg Enters.),* 304 F.3d 410, 438 (5th Cir. 2002); *In re Senior Care Ctrs., LLC,* 607 B.R. 580, 587 (Bankr. N.D. Tex. 2019)

> "As long as assumption of a lease appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to assume the lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code …"

*Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir. 1985) (omission in original) (quoting *Allied Technology, Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982); *see also In re Mirant*, 378 F.3d 511, 524 n.5 (5th Cir. 2004) (reiterating that the general rule that "[t]he rejection decision under § 365 is generally left to the business judgment of the bankruptcy estate" remains unchanged); *In re Wolflin Oil*, 318 B.R. 392, 396 (Bankr. N.D. Tex. 2004) (reviewing a debtor's decision to assume and reject leases by determining if it "is a proper exercise of business judgment"); *In re Texas Sheet Metals, Inc.*, 90 B.R. 260, 265 (Bankr. S.D. Tex. 1988) ("The traditional business judgment standard governs the rejection of ordinary executory contracts.").

18.     Furthermore, section 365(b) places requirements on a debtor in possession if the executory contract to be assumed is in default. *See* 11 U.S.C. 365(b)(1)(a) ("If there has been a

default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee cures, or provides adequate assurance that the trustee will promptly cure …").

19. Here, the iLink Agreement and iLink Account are not in default and the Debtors have maintained and properly funded all requests with the iLink Account both pre- and post-petition.

20. Accordingly, the requirements of section 365(b) are inapplicable because a default does not presently exist under the iLink Agreement. "However, adequate assurance of future performance by the assignee is a condition of assignment of an executory contract or unexpired lease whether or not there has been a default." 3 *Collier on Bankruptcy* ¶ 365.06[1] (16th ed. 2021) (citing *In re* FKA FC, LLC, 545 B.R. 567, 573 (Bankr. D. Del. 2014) (the party moving to assume an executory contract or unexpired lease has the ultimate burden of proving that (i) the agreement is subject to assumption, and (ii) all requirements for assumption have been satisfied)).

21. Section 365(b)(1)(C) requires that a debtor in possession "provides adequate assurance of future performance under such contract or lease" prior to assumption. "In determining adequate assurance of future performance, courts have considered some of the following factors: the debtor's payment history; presence of a guarantee; presence of a security deposit; evidence of profitability; a plan which would earmark money exclusively for the landlord; the general outlook in the debtor's industry; and whether the unexpired lease is at, or below, the prevailing rate." 3 *Collier on Bankruptcy* ¶ 365.06[3a] (16th ed. 2021) (citing *In re* FKA FC, LLC, 545 B.R. 567, 573 (Bankr. D. Del. 2014) (citing *In re* M. Fine Lumber Co., 59 C.B.C. 2d 636, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008); *In re* Patriot Place, Ltd., 486 B.R. 773, 801 (Bankr. W.D. Tex. 2013)).

22. As noted above, Flexible has maintained performance under the iLink Agreement both pre- and post-petition. Flexible does not believe that it would have any difficulty maintaining

future performance under the iLink Agreement based on current and prior obligations. Furthermore, the assignment of the iLink Agreement and iLink Account to eCapital, a reputable and financially strong factoring company, also guarantees future performance under the iLink Agreement for iLink.

23.     Section 365(f) of the Bankruptcy Code provides that "the trustee may assign" the debtors' unexpired leases.  11 U.S.C. § 365(f).  The debtor-in-possession's decision to assign the unexpired lease is evaluated under the business judgment standard.  *See In re ANC Rental Corp., Inc.*, 277 B.R. 226, 237-38 (Bankr. D. Del. 2002) ("In order to assume and assign an executory contract or unexpired lease under section 365(f), the debtor must establish that the decision is one made in its sound business judgment.").  The same business judgment standard used for considering assignments is analogous to the business judgment standard used when the assumption or rejection of an executory contract is reviewed.  The debtor may assign such contract or lease providing that the debtor assume the contract or lease pursuant to section 365(b) and provides adequate assurance of future performance by the assignee.  11 U.S.C. § 365(f)(2).

24.     The business judgment standard is satisfied when a debtor determines that assumption and assignment will benefit the estate.  *In re Wolflin Oil*, 318 B.R. at 396 ("the act of assumption must be grounded, at least in part, in the conclusion that maintenance of the contract is more beneficial to the estate than doing without the other party's services."), *In re ANC Rental Corp., Inc.*, 277 B.R. at 238 (finding that the debtor established a sound business purpose when the assignment would result in a reduction of the debtor's expenses), *In re Food City, Inc.*, 94 B.R. 91, 93-94 (Bankr. W.D. Tex. 1988) ("When rejecting, [a contract] the trustee must balance the benefit foregone against the burden of which the estate is being relieved.").

25.     In the present case, the Debtors' assumption and assignment of the iLink Account to eCapital meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code, As discussed above, the transactions contemplated by the

will provide significant benefits to the Debtors' estates. Accordingly, the assumption and assignment of the iLink Account is undoubtedly a sound exercise of the Debtors' business judgment.

## **WAIVER OF THE FOURTEEN-DAY STAY OF BANKRUPTCY RULE 6004(h)**

26.    Unless the Bankruptcy Court orders otherwise, Bankruptcy Rule 6004(h) provides that all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of an order approving a sale. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the approval order can be implemented. *See* Advisory Committee Notes to FED. R. BANKR. P. 6004(h) (the "Advisory Notes").

27.    Although Bankruptcy Rule 6004(h) and the Advisory Notes are silent as to when a court should "order otherwise" and either eliminate or reduce the fourteen-day stay period, one court has held that because the debtor had demonstrated that the sale price was reasonable, the buyer was ready to complete the sale, and there would be storage charges for the property, waiver of the fourteen-day stay period was justified. *In re Perry Hollow Management Co., Inc.*, 297 F.3d 34, 41 (1st Cir. 2002).

28.    In this case, it is imperative that the assumption and assignment is consummated as soon as possible. eCapital has a present need for the iLink Account and is ready and willing to take assignment as soon as the sale is authorized by the Court. The Debtors believe that a delay in their ability to consummate the sale may cause eCapital to rescind its offer to assume the iLink Account. The Debtors submit and, if necessary, will establish at any hearing on the Motion that the terms and conditions for the assumption and assignment are fair and that eCapital is prepared to complete the assignment immediately upon approval by the Court. Accordingly, the Debtors hereby request that the Bankruptcy Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

## **LIMITED NOTICE**

29.     Notice of this Motion will be provided to the office of the United States Trustee for

the Northern District of Texas, the Debtors' prepetition secured lenders, the holders of the

twenty (20) largest unsecured claims against the Debtors, and the parties filing a notice of

appearance, as set forth in the Certificate of Service filed herewith.  Under the Bankruptcy

Code, the Bankruptcy Rules, and the N.D. Tex. L.B.R., the Debtors submit that no other further

notice need be provided.

## **PRAYER**

WHEREFORE, the Debtors respectfully request that the Court enter an order

substantially in the form attached to this Motion granting the relief requested in this Motion, and

grant the Debtors such other and further relief as may be just and proper.

Dated: October 13, 2021

Respectfully submitted,

/s/ Lynda L. Lankford
Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## **CERTIFICATE OF SERVICE**

 I hereby certify that a true and correct copy of the foregoing document was served upon the office of the United States Trustee for the Northern District of Texas, the secured lenders, the holders of the twenty (20) largest unsecured claims against the Debtors, and parties filing a notice of appearance, via ECF electronic Notice, if available, on October 13, 2021 and via United States Mail, first class postage prepaid on October 13, 2021.

/s/ Lynda L. Lankford
Lynda L. Lankford

C:\Users\mbates\AppData\Local\Temp\5u5tllsg\CLEAN COPY - Motion to Sell Assign iLink (FP Draft) 10.13.21 JS.docx

**Service List**
**Flexible Funding Ltd. Liability Co.**
**21-42215-mxm11**
**#6264**

Flexible Funding Ltd. Liability Co.
5600 Clearfork Main St.
Suite 420
Fort Worth, TX 76109

Elizabeth Young, Trial Attorney
Office of the U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX 75202

Instapay Flexible, LLC.
5600 Clearfork Main St.
Suite 420
Fort Worth, TX 76109

Bison Investors, LLC
1775 Wehrle Drive, Ste. 300
Williamsville, NY 14221

Umpqua Bank
Attn: Kevin Foley
11720 El Camino Real Suite 100
San Diego, CA 92130

First Horizon Bank
165 Madison Ave. 10th Floor
Memphis, TN n38103

Medalist Partners LP
777 Third Avenue
Suite 1402
New York, NY 10017

Umpqua Bank
c/o Loan Support Services
PO Box 1580
Roseburg, OR 97470

CIT Bank
f/k/a Mutual of Omaha Bank
3580 Camel Mountain Road, Suite 160
San Diego, CA 92130

# LIST OF TWENTY LARGES UNSECURED CREDITORS

Charisse Castagnoli
6905 Peppervine Cv.
Austin, TX 78750

Cheng Chin Liao
13526 Cielo Ranch Road
San Diego, CA 92130

Cheng Te Liao
940 Camino Verde Cir
Walnut Creek, CA 94597

The Frances Capper Marital Trust FBO
Frances Capper, c/o Norman Capper
1101 Fifth Avenue #350
San Rafael, CA 94901

Jerry & Rosemary Fong
7700 Marker Road
San Diego, CA 92130

Carle Mackie Power & Ross LLP
100 B Street
Suite 400
Santa Rosa, CA 95401

Scott Dirvonas, c/o Dirvonas Interactive,
LLC
PO Box 665
Edwards, CO 81632

Scott Dirvonas, c/o Dirvonas Interactive,
LLC
210 Edwards Village Blvd #D201
Edwards, CO 81632

Bison Investors LLC, c/o Levinson,
Arshonsky & Kurtz, LP
15303 Ventura Blvd.,
Suite 1650
Sherman Oaks, CA 91403

Fox Rothchild
2000 Market Street
20th Floor
Philadelphia, PA 19103

PAHL & McCAY
225 West Santa Clara St
Ste 1500
San Jose, CA 95113-1700

Prime Financial Recruiting
225 West Santa Clara St
Balch Springs, TX 75180

Fastmetrics
PO Box 77267
San Francisco, CA 94107

Federal Express
PO Box 7221
Pasadena, CA 1109-7321

RingCentral, Inc.
20 Davis Drive
Belmont, CA 94002

FactorCloud
3490 Piedmont Rd NE
Suite 1350
Atlanta, GA 30305

Webflow
398 11th St
2nd Floor
San Francisco, CA 94103

Slack Headquarters
500 Howard St
San Francisco, CA 94105

CircleCI
201 Spear St
#1200
San Francisco, CA 94105

Plaid Inc.
PO Box 636
San Francisco, CA 94104

Notion HQ
930 Alabama St
San Francisco, CA 94110

Pluralsight HQ
182 N W Union Ave
Farmington, UT 84025

Adobe Creative Cloud
345 Park Avenue
San Jose, CA 95110-2704

Texas Secretary of State
1019 Brazos St
Austin, TX 78701

Shutterstock, Inc.
350 Fifth Avenue
21st Floor
New York, NY 10118

GitHub
88 Colin P Kelly Jr St
San Francisco, CA 94107

Truckstop.com
222 N Plymouth Ave
New Plymouth, ID 83655

First Corporate Solutions, Inc.
914 S St
Sacramento, CA 95811

Chi Wei Liao
940 Camino Verde Cir
Walnut Creek, CA 94597

The Steve & Jyoti Elias Trust
One Embarcadero Center Ste 1510
San Francisco, CA 94111-3627

Ropes & Gray LLP
PO Box 70280
Philadelphia, PA 19176-0280

Capper Investment Company, LLC, c/o
Norman Capper
1101 Fifth Avenue, 350
San Rafael, CA 94901

Carrier411 Services, Inc.
1540 INTERNATIONAL PARKWAY
LAKE MARY, FL

Levinson, Arshonsky & Kurtz, LP
15303 Ventura Blvd.,
Suite 1650
Sherman Oaks, CA 91403

Rewind Backups
1053 Somerset St W
Ottawa, Canada

# NOTICES OF APPEARANCE

Laurie Spindler
LINEBARGER GOGGAN BLAIR & SAMPSON,
LLP
2777 N. Stemmons Freeway
Suite 1000
DALLAS, TX 75207

Brent R. McIlwain, Esq.
Holland & Knight, LLP
200 Cresent Court, Suite 1600
Dallas, TX 75201

Demetra Liggins
McGuire Woods, LLP
JP Morgan Chase Tower
600 Travis Street, Suite 7500
Houston, TX 77002

Rosendo Gonzalez
Gonzalez & Gonzalez Law
A Professional Corporation
530 S. Hewitt St., Ste. 148
Los Angeles, CA 90013

Paul D. Moak
Matthew Wilbert Bourda
Gray Reed
1300 Post Oak Blvd. Suite 2000
Houston, TX 77056

Amber M. Carson
Gray Reed
1601 Elm Street, Suite 4600
Dallas, TX 75201

Michael D. Warner, Esq.
Benjamin L. Wallen, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
440 Louisiana Street, Suite 900
Houston, TX 77002

Charles A. Beckham, Jr.
Arsalan Muhammad
Martha Wyrick
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 4000
Houston, TX 77010

Catherine Schlomann Robertson, Esq.
PAHL & McCAY
225 West Santa Clara St
Ste 1500
San Jose, CA 95113-1700

Joseph P. Corcoran, Esq.
6905 Peppervine Cove
Austin, Texas 78750

Scott D. Lawrence
Catherine A. Curtis
Wick Phillips Gould & Martin, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204

Sean A. Gordon
THOMPSON HINE LLP
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326

Scott B. Lepene
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291

Mark A. Platt
Frost Brown Todd LLC
Rosewood Court
2101 Cedar Springs Road, Suit

# Exhibit "A"

## ACCOUNTS RECEIVABLE FINANCING AGREEMENT

This Agreement is made on **January 11, 2012**, by and between:

**FLEXIBLE FUNDING** a Limited Liability Company, ("FLEXIBLE FUNDING"), with offices at One Embarcadero Center, Suite 1510, San Francisco, California 94111, and **ILINK BUSINESS MANAGEMENT, INC.** ("ILINK BUSINESS MANAGEMENT"), with offices at 11650 Mission Parkway Drive, Rancho Cucamonga, California 91730. The parties hereto hereby agree as follows:

FLEXIBLE FUNDING hereby agrees to provide ILINK BUSINESS MANAGEMENT services as more fully set forth and specified in this Agreement. Such services shall include: (1) establishing and maintaining for ILINK BUSINESS MANAGEMENT's benefit an "open end" credit program, as defined under California Financial Code § 26500, using as collateral the assignment by ILINK BUSINESS MANAGEMENT to FLEXIBLE FUNDING of all of the ACCOUNTS RECEIVABLE resulting from placement of any temporary employees (Hereafter designated as "EMPLOYEE") with a third-party business entity (Hereafter designated as "CLIENT"); (2) administering the accounts created thereby; and providing such other services as more fully described in below. This Agreement, the documents expressly referred to herein, including without limitation schedules attached, hereto constitute the sole understandings between the parties regarding the subject matter hereof; modification thereof may only be made by a written agreement executed by both parties hereto. All terms are to be defined as those terms are commonly understood.

The laws of the State of California shall govern the construction of this Agreement and the rights and duties of the parties hereunder.

## ACCOUNTS MANAGEMENT

1.      ILINK BUSINESS MANAGEMENT shall, upon execution or consummation of any agreement with a CLIENT for the placement of any EMPLOYEE(s) with that CLIENT in connection with which ILINK BUSINESS MANAGEMENT desires FLEXIBLE FUNDING to provide services under this Agreement, within three (3) days of such agreement, provide to FLEXIBLE FUNDING information concerning that CLIENT'S bank and trade references. FLEXIBLE FUNDING may conduct a credit investigation of such CLIENT by any commercially reasonable means, including inquiries to Credit Reporting Agencies or concerns such as Experian. In addition, FLEXIBLE FUNDING may notify ILINK BUSINESS MANAGEMENT of such investigation and share information so received.

2.      FLEXIBLE FUNDING shall advise ILINK BUSINESS MANAGEMENT of the acceptance or rejection of each CLIENT submitted for funding without waiving its right at any subsequent time to terminate or modify any such acceptance.

3.      ILINK BUSINESS MANAGEMENT shall furnish to FLEXIBLE FUNDING:

- e-Fax of each signed time card for EMPLOYEES to FLEXIBLE FUNDING;
- e-Fax of each invoice sent to the CLIENT;
- e-mail the outstanding invoice data file in a format acceptable to Flexible Funding.

Each signed copy of a time card, the invoice and the outstanding invoice data file shall constitute ILINK BUSINESS MANAGEMENT's representation to FLEXIBLE FUNDING that the services described therein were in fact rendered and that the receivable evidenced thereby is genuine, bona fide and collectable. On the basis of such representation FLEXIBLE FUNDING shall provide financing funds for ILINK BUSINESS MANAGEMENT.

4.      Each of such fundings shall become due and payable to FLEXIBLE FUNDING on the date that the CLIENT makes payment to ILINK BUSINESS MANAGEMENT of the corresponding invoice.

5.      **FLEXIBLE FUNDING agrees all invoices to CLIENTS shall designate ILINK BUSINESS MANAGEMENT as the named payee, with specific instructions to deliver payment to P.O. Box 26470, San Francisco, CA 94126. The only address on invoices shall be P.O. Box 26470, San Francisco, CA 94126.** If any payment is otherwise received by ILINK BUSINESS MANAGEMENT, ILINK BUSINESS MANAGEMENT shall promptly notify the CLIENT in writing to send future payments to P.O. Box 26470, San Francisco, CA 94126.

6.      ILINK BUSINESS MANAGEMENT agrees that if any collections from CLIENTS are received by ILINK BUSINESS MANAGEMENT such payment shall be held by ILINK BUSINESS MANAGEMENT in trust for FLEXIBLE FUNDING, separate and apart from ILINK BUSINESS MANAGEMENT'S own funds, and shall be immediately delivered to FLEXIBLE FUNDING in the identical form in which it was received.

1

7.      ILINK BUSINESS MANAGEMENT shall execute all authorizations or other documents requested to establish and maintain FLEXIBLE FUNDING's authority to accept, endorse and deposit all remittances to the account of FLEXIBLE FUNDING. ILINK BUSINESS MANAGEMENT hereby releases, discharges and agrees to hold harmless City National Bank from any and all actions, suits, causes of action, claims and demands whatsoever which ILINK BUSINESS MANAGEMENT has or may have in the future arising out of the authority ILINK BUSINESS MANAGEMENT has granted to FLEXIBLE FUNDING to accept, endorse and deposit remittances for ILINK BUSINESS MANAGEMENT to the FLEXIBLE FUNDING City National Bank account number **432689107.**

8.      Upon receipt of the signed copy of the time cards, the invoices and the outstanding invoice data file from ILINK BUSINESS MANAGEMENT, FLEXIBLE FUNDING shall forward within one (1) business day to ILINK BUSINESS MANAGEMENT a loan and collection report summarizing all transactions to and from ILINK BUSINESS MANAGEMENT's account.

## ADVANCES; COMPENSATION TO FLEXIBLE FUNDING

9.      Upon receipt of the signed loan report from ILINK BUSINESS MANAGEMENT, FLEXIBLE FUNDING shall, within one (1) business day, advance funds to such bank account as ILINK BUSINESS MANAGEMENT shall designate. The amount of each such advance shall be specified on the loan report with the maximum advance equal to the Loan Amount (as defined below) less the aggregate amount of any and all outstanding loan balances hereunder. In the event that the aggregate loan balance outstanding hereunder at any time exceeds the Loan Amount, ILINK BUSINESS MANAGEMENT shall pay such excess to FLEXIBLE FUNDING.

10.     ILINK BUSINESS MANAGEMENT agrees, in consideration for funds loaned to it by FLEXIBLE FUNDING under this Agreement, to pay to FLEXIBLE FUNDING a one time funding fee for funds loaned, such fee to be charged to ILINK BUSINESS MANAGEMENT prior to delivery of funds to ILINK BUSINESS MANAGEMENT.

11.     The one time funding fee to be charged on any monies loaned under this agreement shall be calculated as set forth below and as agreed to in the FLEXIBLE FUNDING weekly Loan Report:

    a.      The total amount of funds available to ILINK BUSINESS MANAGEMENT under this open ended credit program shall be the sum equal to **90%** of the aggregate net face amount of all outstanding, unpaid invoices that are (1) not over **60 days** unpaid; (2) have not been disqualified by FLEXIBLE FUNDING for credit or other reason(s); and (3) are not disputed by the CLIENT, minus the amount of any outstanding loan amounts (Hereafter the "Loanable Amount").

    b.      In respect of each new invoice for which funds are loaned, the following rates shall be used to calculate the funding fee withheld from the funds loaned. Interest shall accrue on the average daily outstanding loan balance at the rate of **.000520 per day (19% per annum)**, and be payable on the "Interest Payment Date" as defined below:  Interest Payment Date shall be the first to occur of (i) an advance of funds by FLEXIBLE FUNDING to ILINK BUSINESS MANAGEMENT hereunder, or (ii) the last day of the month in which it accrues.

    c.      In no event shall ILINK BUSINESS MANAGEMENT's aggregate indebtedness on the line of credit at any one time exceed, without FLEXIBLE FUNDING's prior written approval, more than more than 85% of the Eligible Accounts pledged herein or **$750,000.00** (the "LIMIT"). In the event that the balance owing on the line of credit under this Agreement exceeds the Limit, or in the event that said line of credit exceeds the percentage set forth above of the value of eligible accounts, as determined by FLEXIBLE FUNDING, ILINK BUSINESS MANAGEMENT understands and agrees that there shall be no further advances on the line of credit to the undersigned unless and until ILINK BUSINESS MANAGEMENT pays the amount of excess, (the "Over Advance"), and ILINK BUSINESS MANAGEMENT hereby promises to pay such excess upon demand of FLEXIBLE FUNDING.

## COLLATERAL

12.     ILINK BUSINESS MANAGEMENT hereby agrees that all of its obligations under this Agreement are hereby secured by the assignment to FLEXIBLE FUNDING of the following property (hereinafter the "Collateral"):

    a.      All accounts receivable, rights to receive payment for services rendered whether by contract or otherwise, rights to liquidated damages, claims for unliquidated debts (the "Accounts") now existing or hereafter created

2

evidenced by time cards created in connection with the performance of services by ILINK BUSINESS MANAGEMENT's employees or agents); and

b. All proceeds from such Accounts, including without limitation, all cash monies, bank accounts, deposit accounts and similar accounts of any kind, and;

c. All books and records relating to any of the above, including, without limitation, all computer programs, printed output and computer readable data in the possession or control of ILINK BUSINESS MANAGEMENT, any computer service bureau, FLEXIBLE FUNDING, or any third party.

13. ILINK BUSINESS MANAGEMENT agrees to execute, upon demand by FLEXIBLE FUNDING, any and all Financing Statements, Continuation Statements or other statements useful or necessary to perfect FLEXIBLE FUNDING's security interest hereunder, in whatsoever form FLEXIBLE FUNDING may reasonably require. ILINK BUSINESS MANAGEMENT hereby irrevocably appoints FLEXIBLE FUNDING its agent for the purpose of executing and filing any financing statement or similar document which may be necessary to perfect and continue perfected such security interest under the Uniform Commercial Code.

14. FLEXIBLE FUNDING may, at any time, whether or not ILINK BUSINESS MANAGEMENT's payment obligations under the ACCOUNTS RECEIVABLE FINANCING AGREEMENT or hereunder have been accelerated, with two (2) days' notice to ILINK BUSINESS MANAGEMENT: (i) notify any account debtor that its Account has been assigned to FLEXIBLE FUNDING by ILINK BUSINESS MANAGEMENT and that payment thereof shall be made to the order of and directly to FLEXIBLE FUNDING and/or (ii) demand, collect or enforce payment of any Accounts. FLEXIBLE FUNDING shall have no obligation to take any such action and shall have no liability for any failure to collect or enforce payment of any such Accounts.

15. ILINK BUSINESS MANAGEMENT warrants and represents that (except insofar as ILINK BUSINESS MANAGEMENT and FLEXIBLE FUNDING have expressly otherwise agreed in writing):

a. The Collateral is free and clear of all liens, encumbrances, security interests and adverse claims other than such as were created by this Agreement in favor of FLEXIBLE FUNDING; and

b. All Accounts included in the calculation of the Available Loan Amount will, when assigned and at all times thereafter, be prime accounts, created by absolute rendering of services, and will be genuine, bona fide and collectible; and

c. No Account included in the calculation of the Available Loan Amount will, when assigned and at all times thereafter, be subject to any dispute, right of offset, counterclaim, or right of cancellation; and

d. All Accounts included in the calculation of the Available Loan Amount will, when assigned and at all times thereafter, be due and unconditionally payable on terms of thirty (30) days or less, and will conform to the terms expressly set forth on the face of the relevant invoice; no account will be past due at the time assigned; and

e. All facts, figures, representations given, or caused to be given by ILINK BUSINESS MANAGEMENT to FLEXIBLE FUNDING in connection with the value of the invoices assigned hereunder will be true and correct. FLEXIBLE FUNDING may verify CLIENT's account balances; and

f. ILINK BUSINESS MANAGEMENT's books and records do and will fully and accurately reflect all of ILINK BUSINESS MANAGEMENT's assets and liabilities (absolute and contingent), have been and will be kept in the ordinary course of business in accordance with generally accepted accounting principles consistently applied and all information contained therein is and will be true and correct; and

g. All taxes of any governmental or taxing authority due or payable by, or imposed or assessed against, ILINK BUSINESS MANAGEMENT, have been paid and will be paid in full before delinquency; and

h. There are no actions or proceedings pending by or against ILINK BUSINESS MANAGEMENT before any court or administrative agency, and there are no pending, threatened, or imminent governmental investigations, or claims, complaints, or prosecutions involving ILINK BUSINESS MANAGEMENT; and

i. ILINK BUSINESS MANAGEMENT has the legal power and authority to enter into this Agreement and to perform and discharge ILINK BUSINESS MANAGEMENT's obligations hereunder.

16.     Each warranty and representation contained in this Agreement shall be deemed repeated with each advance of funds and shall be conclusively presumed to have been relied on by FLEXIBLE FUNDING regardless of any investigation made, or information possessed by FLEXIBLE FUNDING. The warranties, representations and agreements set forth herein shall be cumulative and in addition to any and all other warranties, representations and agreements contained in any other document or instrument which ILINK BUSINESS MANAGEMENT shall give, or cause to be given, to FLEXIBLE FUNDING, either now or hereafter.

## TERMINATION BY FLEXIBLE FUNDING

17.     In the event that:

a.     ILINK BUSINESS MANAGEMENT fails to comply with any provision of this Agreement; or

b.     ILINK BUSINESS MANAGEMENT makes any false, misleading or untrue representation or warranty in connection with this Agreement; or

c.     ILINK BUSINESS MANAGEMENT makes a general assignment for the benefit of its creditors other than FLEXIBLE FUNDING or commences or has commenced against it any proceeding under any Title of the Bankruptcy Code of the United States or under any similar law existing for the relief from creditors; or

d.     A Receiver or Trustee is appointed for ILINK BUSINESS MANAGEMENT or any proceeding is instituted for the dissolution or full or partial liquidation of ILINK BUSINESS MANAGEMENT; or

e.     A sale or transfer is effected of ILINK BUSINESS MANAGEMENT in one or a series of related transactions of fifty percent (50%) or more of the interests of ILINK BUSINESS MANAGEMENT without the prior written approval of FLEXIBLE FUNDING, which approval shall not be unreasonably withheld; or

f.     Any change occurs in ILINK BUSINESS MANAGEMENT's business, including, without limitation, the ownership thereof, or financial condition, which causes FLEXIBLE FUNDING to deem itself insecure; or

g.     Any subordination agreement whereby any indebtedness of ILINK BUSINESS MANAGEMENT to any third party is subordinated to ILINK BUSINESS MANAGEMENT's obligations to FLEXIBLE FUNDING is amended without the consent of FLEXIBLE FUNDING or is breached or repudiated in any manner by a third party;

then, in any such case, FLEXIBLE FUNDING may suspend or terminate FLEXIBLE FUNDING's obligations to make advances and/or render other services hereunder, in which event ILINK BUSINESS MANAGEMENT shall be obligated, without further demand, protest or notice of any kind, to pay immediately to FLEXIBLE FUNDING the full amount of all loans outstanding hereunder. Upon termination, FLEXIBLE FUNDING may take all steps deemed necessary to effect collection of the accounts.

18.     FLEXIBLE FUNDING may terminate its obligations to make advances and/or render other services under this Agreement at any time provided it has given written notice to ILINK BUSINESS MANAGEMENT at least sixty (60) days prior to the effective date of termination and further provided that all loan amounts shall become immediately due and payable.

19.     This Agreement and the security interests hereby granted shall remain in effect until such time as all payment obligations to FLEXIBLE FUNDING have been paid and satisfied in full.

20.     All amounts received by FLEXIBLE FUNDING from Accounts assigned to FLEXIBLE FUNDING hereunder shall be applied to pay ILINK BUSINESS MANAGEMENT's outstanding indebtedness to FLEXIBLE FUNDING. Any amount remaining after payment in full of all of ILINK BUSINESS MANAGEMENT's outstanding indebtedness to FLEXIBLE FUNDING shall be remitted promptly to ILINK BUSINESS MANAGEMENT. At such time as all obligations of ILINK BUSINESS MANAGEMENT to FLEXIBLE FUNDING shall have been indefeasibly paid and satisfied in full and FLEXIBLE FUNDING shall have no further obligations to provide financing under the ACCOUNTS RECEIVABLE FINANCING AGREEMENT, FLEXIBLE FUNDING will re-assign to ILINK BUSINESS MANAGEMENT any and all interests it may have in the Collateral and will execute such termination statements as ILINK BUSINESS MANAGEMENT may reasonably request.

21.     In the event that payment of the loan amounts outstanding is not made timely by ILINK BUSINESS MANAGEMENT as required in the above paragraphs, then interest shall accrue and be payable upon demand commencing on the 60th day

4

thereafter. Such interest shall be calculated upon the average daily outstanding loan balance from such 60th day to the date of payment at a rate per annum equal to eighteen percent (18%).

## TERMINATION BY ILINK BUSINESS MANAGEMENT

22.     In the event that:

    a.     FLEXIBLE FUNDING fails to pay to ILINK BUSINESS MANAGEMENT when due any monies owing to ILINK BUSINESS MANAGEMENT under this Agreement; or

    b.     FLEXIBLE FUNDING fails to perform timely the services to be rendered by FLEXIBLE FUNDING hereunder,

then, ILINK BUSINESS MANAGEMENT shall notify FLEXIBLE FUNDING of its intent to terminate this Agreement, which termination shall become effective only upon the payment to FLEXIBLE FUNDING of the full amount of loans outstanding hereunder and any interest payable. If such amounts are not paid in full within sixty (60) days after delivery of such notice of intent to terminate, then interest shall accrue and be payable upon demand commencing on the 60th day thereafter. Such interest shall be calculated upon the average daily outstanding loan balance from such 60th day to the date of payment at a rate per annum equal to eighteen percent (18%).

23.     ILINK BUSINESS MANAGEMENT may terminate this Agreement at any time, for any reason, provided it has given written notice to FLEXIBLE FUNDING at least sixty (60) days prior to the effective date of termination and further provided that all loan amounts outstanding and interest, if any, payable hereunder shall have been paid in full to FLEXIBLE FUNDING prior to the effective date of termination.

24.     Upon termination of this Agreement for any reason, FLEXIBLE FUNDING shall render an accounting for all accounts to ILINK BUSINESS MANAGEMENT. Termination of this Agreement shall not relieve or discharge ILINK BUSINESS MANAGEMENT from its payment obligations to FLEXIBLE FUNDING until such time as all payment obligations to FLEXIBLE FUNDING have been paid and satisfied in full.

## LIABILITY INSURANCE AND EMPLOYEE BONDS

25.     ILINK BUSINESS MANAGEMENT shall provide FLEXIBLE FUNDING with proof of EMPLOYEE bonding, workers compensation and liability insurance. ILINK BUSINESS MANAGEMENT shall notify FLEXIBLE FUNDING of any changes in insurance and shall ensure that FLEXIBLE FUNDING is named on the certificate of insurance list as an additional named insured.

## INDEMNIFICATION

26.     ILINK BUSINESS MANAGEMENT agrees and warrants that under no circumstances are EMPLOYEES of ILINK BUSINESS MANAGEMENT to be considered EMPLOYEES of FLEXIBLE FUNDING for any purpose, including but not limited to, any state or federal wage and hour law, federal withholding, state withholding, withholding to other taxing authority or health benefits program; EMPLOYEES shall at all times be recognized as the employees of ILINK BUSINESS MANAGEMENT for all purposes. ILINK BUSINESS MANAGEMENT shall promptly after each pay period as required, make payments to the Internal Revenue Service for federal taxes; to the State for state taxes; and to any other governmental agency to whom any tax or similar payment obligation is due with respect to EMPLOYEES' activities. ILINK BUSINESS MANAGEMENT shall cause FLEXIBLE FUNDING to be given promptly suitable evidence of all such payments.

27.     ILINK BUSINESS MANAGEMENT warrants that all of its EMPLOYEES are legally entitled to be employed in the United States and agrees to defend and hold harmless FLEXIBLE FUNDING, its directors, officers, employees and agents, for any failure on the part of ILINK BUSINESS MANAGEMENT to comply with relevant immigration, non-discrimination, employment and employee-benefit laws.

28.     ILINK BUSINESS MANAGEMENT agrees to defend, indemnify and hold FLEXIBLE FUNDING harmless from and against any claim, charge, loss, legal or other expense, or alleged claim, defense or offset arising out of the performance (or non-performance) by an EMPLOYEE of services for a CLIENT or arising from or in connection with collection of a CLIENT's obligations for ILINK BUSINESS MANAGEMENT's services.

## WAIVER

29.     The failure of FLEXIBLE FUNDING or ILINK BUSINESS MANAGEMENT to enforce any of the terms and provisions of this Agreement, or the failure to exercise any right upon a default hereunder shall apply only in the particular instance and shall not operate as a continuing waiver of rights.

## NOTICE

30.     Any NOTICE, Request or Demand under this Agreement shall be in writing.

31.     Any NOTICE, Request or Demand sent by First Class Mail shall be deemed received and effective on the day on which it is received.

32.     Any NOTICE, Request or Demand sent by registered or certified mail, with or without return receipt requested, and properly addressed, with postage prepaid shall be effective on the third business day after the date on which it is so mailed or the day on which such notice is actually received, whichever is the earliest.

33.     NOTICE of any change of address by either party shall be in writing and mailed not less than ten (10) days prior to any change of address of such party's principal place of business.  ILINK BUSINESS MANAGEMENT shall notify FLEXIBLE FUNDING of any and all changes or additions to its places of business.

## INSPECTION AND REPORTING

34.     FLEXIBLE FUNDING, through its agents or employees, shall have the right to inspect and audit the books and records of ILINK BUSINESS MANAGEMENT pertaining to transactions subject to this Agreement at all reasonable times without hindrance or delay at FLEXIBLE FUNDING's expense.   ILINK BUSINESS MANAGEMENT shall provide FLEXIBLE FUNDING with copies of it's quarterly balance sheet, income statement and Employer's Quarterly Federal Tax Return, Form 941, by the 30th day following the end of each quarter.  IRS tax payments shall be made using EFPTS and provide FLEXIBLE FUNDING with the password to monitor tax deposits.

35.     ILINK BUSINESS MANAGEMENT shall have the right to inspect and audit the books and records of FLEXIBLE FUNDING pertaining to transactions subject to this Agreement upon termination of this Agreement by either party or upon default by FLEXIBLE FUNDING without hindrance or delay at ILINK BUSINESS MANAGEMENT's expense.

## ASSIGNMENT

36.     This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors or permitted assigns, and may be assigned by FLEXIBLE FUNDING, but shall not be assignable by ILINK BUSINESS MANAGEMENT without the express, written consent of FLEXIBLE FUNDING.

37.     Any attempted assignment by ILINK BUSINESS MANAGEMENT of its rights or obligations under this Agreement without the express, prior written consent of FLEXIBLE FUNDING shall be void, and any permitted assignment will not excuse ILINK BUSINESS MANAGEMENT's obligations to FLEXIBLE FUNDING without a full release of such obligations and duties, signed by both parties.  FLEXIBLE FUNDING may still proceed against ILINK BUSINESS MANAGEMENT on any payment obligation outstanding at the time of assignment until such obligation is indefeasibly fulfilled by ILINK BUSINESS MANAGEMENT or its assigns.

38.     The parties anticipate that FLEXIBLE FUNDING may assign its rights in the collateral provided under this Agreement and monies receivable by it hereunder to its lender(s).  ILINK BUSINESS MANAGEMENT agrees to such assignment and that any such assignee shall be a third-party beneficiary of this Agreement.

## SEVERABILITY OF PROVISIONS

39.     Each and every provision of this Agreement shall be severable from every other provision for the purposes of determining legal enforceability of any such provision or provisions.

6

## COMMUNICATION

40.     Both parties agree to communicate with one another fully and in good faith, particularly about business conditions, changes, concerns and or other matters pertaining to ILINK BUSINESS MANAGEMENT's business, and each shall inform the other as soon as possible but not later than five days after any relevant occurrence.

41.     Any dispute between FLEXIBLE FUNDING and ILINK BUSINESS MANAGEMENT arising out of or in connection with this Agreement shall, to the extent permitted by law, be determined by binding arbitration before an arbitrator of the American Arbitration Association in San Francisco. The proceeding will be governed by the rules of that Association. The losing party shall pay to the prevailing party any and all legal expenses and reasonable attorneys' fees incurred by the prevailing party in enforcing this Agreement.

## AUTHORITY

42.     ILINK BUSINESS MANAGEMENT is a Corporation, existing and in good standing under the laws of the State of California. The execution, delivery and performance of this Agreement and the documents contemplated herein are within ILINK BUSINESS MANAGEMENT's powers, have been duly authorized, and are not in contravention of any law, the terms of any indenture, agreement or undertaking to which ILINK BUSINESS MANAGEMENT is a party or by which it is bound.

43.     ILINK BUSINESS MANAGEMENT hereby authorizes, and FLEXIBLE FUNDING hereby agrees to accept, the faxed signature of **Alvaro Gabriel Ayala** or **Elvis F. Huerta** binding upon ILINK BUSINESS MANAGEMENT for purposes of the representations set forth above and for confirming any loan report. ILINK BUSINESS MANAGEMENT shall on the same day it faxes any document, send by mail or hand delivery an original thereof to FLEXIBLE FUNDING.

## FLEXIBILITY

44.     FLEXIBLE FUNDING's rights and remedies under this Agreement shall be cumulative and FLEXIBLE FUNDING shall have all other rights and remedies not inconsistent therewith as provided by law. No exercise by FLEXIBLE FUNDING of one right or remedy shall be deemed an election and no waiver by FLEXIBLE FUNDING of any default on ILINK BUSINESS MANAGEMENT's part shall be deemed a continuing waiver. No delay by FLEXIBLE FUNDING shall constitute a waiver or election.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement **January 11, 2012.**


*for* FLEXIBLE FUNDING, LLC                    *for* ILINK BUSINESS MANAGEMENT, INC.

_____   _____            _____   _____
Steve Capper        Steven J. Elias             Alvaro Gabriel Ayala      Elvis F. Huerta

7

2012-02-07 11:08   >>   415 391 1301   P 3/3

## CERTIFICATE COPY OF RESOLUTIONS

RESOLVED, that the Flexible Funding Accounts Receivable Financing Agreement of the date specified below between ILINK BUSINESS MANAGEMENT, INC. ("ILINK BUSINESS MANAGEMENT") and Flexible Funding Limited Liability Company ("FLEXIBLE FUNDING") and all other agreements and documents connected therewith be approved on the terms and conditions as set forth therein;

RESOLVED, that any officer of ILINK BUSINESS MANAGEMENT is authorized and directed to enter into said Agreement and all other agreements and documents connected therewith and to execute the same for and on behalf of ILINK BUSINESS MANAGEMENT on the terms and conditions set forth therein;

RESOLVED, that any officer of ILINK BUSINESS MANAGEMENT is authorized and directed to negotiate, agree upon, execute and deliver, from time to time, in the name of, and on behalf of, ILINK BUSINESS MANAGEMENT, such agreements, amendments and supplements to said Agreement or any other agreement or document connected therewith, and to perform any and all such acts and things as may be required by FLEXIBLE FUNDING in connection with said Agreement or any other agreement or document connected therewith, or may to him seem necessary or proper to implement and effect complete consummation of said Agreement or any other agreement or document connected therewith in all respects and the purpose set forth in these resolutions;

RESOLVED, that these resolutions shall remain in full force and effect until written notice of their amendment or repeal shall be received by FLEXIBLE FUNDING and until all indebtedness and obligations arising out of said Agreement and all other agreements and documents connected therewith shall have been paid and satisfied in full.

The undersigned, as the duly constituted officer of ILINK BUSINESS MANAGEMENT does hereby certify that the foregoing is a true and correct copy of the resolution duly adopted at a meeting of the officers of ILINK BUSINESS MANAGEMENT, duly called, noticed and held on the date specified below at which meeting there was at all time present and acting a quorum of the officers; that said resolutions are in full force and effect; and that the following is a true and correct list of the officers of ILINK BUSINESS MANAGEMENT:

Date of Flexible Funding Accounts Receivable Financing Agreement: **January 11, 2012**
Name of business: **ILINK BUSINESS MANAGEMENT, INC.**

Officer's Name: _Elvis Huerta_

Signature: _____

Officer's Name: _____

Signature: _____

Date ILINK BUSINESS MANAGEMENT's Officers adopted above resolutions: _1/27/12_

8

ATTACHMENT PAGE TO FORM UCC-1

ENTITY'S NAME
**ILINK BUSINESS MANAGEMENT, INC.**

Continued #4 on UCC-1
This FINANCING STATEMENT covers the following types or items of property:

All accounts receivable, rights to receive payment for services rendered whether by contract or otherwise, rights to liquidated damages, claims for unliquidated debts (the "Accounts") now existing or hereafter created arising from any business of ILINK BUSINESS MANAGEMENT, INC. (whether or not such accounts are evidenced by time cards created in connection with the performance of services by ILINK BUSINESS MANAGEMENT's employees or agents); and all proceeds from such accounts, including without limitation, all cash monies, bank accounts, deposit accounts and similar accounts of any kind; and all present and future books and records including, without limitation, all computer programs, printed output, and computer readable data relating to any of the above in the possession or control of ILINK BUSINESS MANAGEMENT, INC., any computer service bureau, FLEXIBLE FUNDING, LCC or any third party.

NOTICE -- PURSUANT TO AN AGREEMENT BETWEEN ILINK BUSINESS MANAGEMENT, INC. AND FLEXIBLE FUNDING, LLC, ILINK BUSINESS MANAGEMENT, INC. HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN.

## UNCONDITIONAL GUARANTY

To induce FLEXIBLE FUNDING LLC, ("FLEXIBLE FUNDING") to extend or to continue to extend financial accommodations to ILINK BUSINESS MANAGEMENT, INC. ("ILINK BUSINESS MANAGEMENT"), the undersigned guarantor ("Guarantor") hereby unconditionally and irrevocably undertakes to FLEXIBLE FUNDING as follows:

1. <u>Promise to Pay and Perform</u>. Guarantor irrevocably guarantees to FLEXIBLE FUNDING the prompt performance of all obligations of ILINK BUSINESS MANAGEMENT of every kind and character owed to FLEXIBLE FUNDING (the "Guaranteed Obligations"). Guarantor shall pay on demand by FLEXIBLE FUNDING all sums due including interest, court costs, and reasonable attorneys' fees that may arise due to guarantors default.

2. <u>Waivers by Guarantor</u>. Guarantor waives all rights and defenses arising out of any election of remedies by FLEXIBLE FUNDING, even though that election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against ILINK BUSINESS MANAGEMENT by operation of Section 580d of the California code of civil procedure or otherwise.

3. <u>Governing Law</u>. This guaranty shall be deemed to have been made in the State of California and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall be determined under, governed by, and constructed in accordance with the laws of the State of California, without regard to principles of conflicts of Law.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty on ___1/29/12___.


Alvaro Gabriel Ayala

Address: _____

_____


**Please have this page notarized**

10

## UNCONDITIONAL GUARANTY

To induce FLEXIBLE FUNDING LLC, ("FLEXIBLE FUNDING") to extend or to continue to extend financial accommodations to ILINK BUSINESS MANAGEMENT, INC. ("ILINK BUSINESS MANAGEMENT"), the undersigned guarantor ("Guarantor") hereby unconditionally and irrevocably undertakes to FLEXIBLE FUNDING as follows:

1. <u>Promise to Pay and Perform</u>. Guarantor irrevocably guarantees to FLEXIBLE FUNDING the prompt performance of all obligations of ILINK BUSINESS MANAGEMENT of every kind and character owed to FLEXIBLE FUNDING (the "Guaranteed Obligations"). Guarantor shall pay on demand by FLEXIBLE FUNDING all sums due including interest, court costs, and reasonable attorneys' fees that may arise due to guarantors default.

2. <u>Waivers by Guarantor</u>. Guarantor waives all rights and defenses arising out of any election of remedies by FLEXIBLE FUNDING, even though that election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against ILINK BUSINESS MANAGEMENT by operation of Section 580d of the California code of civil procedure or otherwise.

3. <u>Governing Law</u>. This guaranty shall be deemed to have been made in the State of California and the validity, construction, interpretation, and enforcement hereof, and the rights of the parties hereto, shall be determined under, governed by, and constructed in accordance with the laws of the State of California, without regard to principles of conflicts of Law.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty on __1/27/12__.

Elvis F. Huerta

Address: _____

**Please have this page notarized**

11



October 24, 2014

Gabriel Ayala
ILINK Business Management, Inc.
11650 Mission Parkway Drive
Rancho Cucamonga, CA 91730

**RE: Contract Revision: 10/24/14**

This is to confirm our agreement to amend our Accounts Receivable Financing Agreement, dated January 11, 2012, as subsequently amended. This revision increases the line LIMIT to $2,000,000.00 (from $1,300,000.00). Section 11(c), as hereby amended, is as follows:

    c.   In no event shall ILINK BUSINESS MANAGEMENT's aggregate indebtedness on the line of credit at any one time exceed, without FLEXIBLE FUNDING's prior written approval, more than **$2,000,000.00** (the "LIMIT"). In the event that the balance owing on the line of credit under this Agreement exceeds the Limit, or in the event that said line of credit exceeds the percentage set forth above of the value of eligible accounts, as determined by FLEXIBLE FUNDING, ILINK BUSINESS MANAGEMENT understands and agrees that there shall be no further advances on the line of credit to the undersigned unless and until ILINK BUSINESS MANAGEMENT pays the amount of excess, (the "Over Advance"), and ILINK BUSINESS MANAGEMENT hereby promises to pay such excess upon demand of FLEXIBLE FUNDING.

This amendment is effective immediately.

Steven Elias

*Managing Member*
*Flexible Funding*



January 8, 2014

Gabriel Ayala
ILINK Business Management, Inc.
11650 Mission Parkway Drive
Rancho Cucamonga, CA 91730

**RE: Contract Revision: 1/8/14**

This is to confirm our agreement to amend our Accounts Receivable Financing Agreement, dated January 11, 2012, as subsequently amended. This revision increases the age of eligible invoices to 75 days (from 60 days). Section 11(a), as hereby amended, is as follows:

> 11. The one time funding fee to be charged on any monies loaned under this agreement shall be calculated as set forth below and as agreed to in the FLEXIBLE FUNDING weekly Loan Report:
>
> a. The total amount of funds available to ILINK BUSINESS MANAGEMENT under this open ended credit program shall be the sum equal to 90% of the aggregate net face amount of all outstanding, unpaid invoices that are (1) not over **75 days** unpaid; (2) have not been disqualified by FLEXIBLE FUNDING for credit or other reason(s); and (3) are not disputed by the CLIENT, minus the amount of any outstanding loan amounts (Hereafter the "Loanable Amount").

This amendment is effective immediately.

Steve Capper
*Managing Member*



April 17, 2013

ILINK BUSINESS MANAGEMENT

**RE: CONTRACT REVISION 4-17-13: SECTION 7 REVISION**

This is a revision of our Accounts Receivable Financing Agreement, as subsequently amended. Effective immediately, this revision modifies Section 7, adding City National Bank to the indemnification, and giving Flexible Funding the ability to solely authorize requests for ACH payments from your Accounts.

Section 7, as hereby amended, is as follows (revisions are in green):

7.  ILINK BUSINESS MANAGEMENT shall execute all authorizations or other documents requested to establish and maintain FLEXIBLE FUNDING's authority to accept, endorse and deposit all remittances to the account of FLEXIBLE FUNDING. ILINK BUSINESS MANAGEMENT hereby appoints FLEXIBLE FUNDING its agent for the purpose of executing all authorizations or other documents to establish and maintain FLEXIBLE FUNDING's authority to accept, endorse and deposit all electronic Account remittances (such as ACH) to the account of FLEXIBLE FUNDING. ILINK BUSINESS MANAGEMENT hereby releases, discharges and agrees to hold harmless and indemnify Umpqua Bank and/or City National Bank from any and all actions, suits, causes of action, claims and demands whatsoever, including reasonable attorneys' fees and costs, which ILINK BUSINESS MANAGEMENT has or may have in the future arising out of the authority ILINK BUSINESS MANAGEMENT has granted to FLEXIBLE FUNDING to accept, endorse and deposit remittances for ILINK BUSINESS MANAGEMENT to the FLEXIBLE FUNDING Umpqua Bank account number 992157222 and/or City National Bank account number 432689107.

*for* FLEXIBLE FUNDING, LLC

AGREED

_____
Steven Elias
*FLEXIBLE FUNDING*

_____
Elvis Huerta
*ILINK BUSINESS MANAGEMENT*



June 12, 2013

Gabriel Ayala
ILINK Business Management, Inc.
11650 Mission Parkway Drive
Rancho Cucamonga, CA 91730

**RE: Contract Revision: 6/12/13**

This is to confirm our agreement to amend our Accounts Receivable Financing Agreement, dated January 11, 2012, as subsequently amended. This revision temporarily increases the line LIMIT (from $750,000.00 to $1,300,000.00.) Section 11(c), as hereby amended, is as follows:

c.      In no event shall ILINK BUSINESS MANAGEMENT's aggregate indebtedness on the line of credit at any one time exceed, without FLEXIBLE FUNDING's prior written approval, more than more than 85% of the Eligible Accounts pledged herein or **$1,300,000.00** (the "LIMIT"). In the event that the balance owing on the line of credit under this Agreement exceeds the Limit, or in the event that said line of credit exceeds the percentage set forth above of the value of eligible accounts, as determined by FLEXIBLE FUNDING, ILINK BUSINESS MANAGEMENT understands and agrees that there shall be no further advances on the line of credit to the undersigned unless and until ILINK BUSINESS MANAGEMENT pays the amount of excess, (the "Over Advance"), and ILINK BUSINESS MANAGEMENT hereby promises to pay such excess upon demand of FLEXIBLE FUNDING.

Steve Capper

*Managing Member*
*Flexible Funding*



June 26, 2017


Gabriel Ayala
ILINK Business Management, Inc.
11650 Mission Parkway Drive
Rancho Cucamonga, CA 91730

**RE: Contract Revision: 6/26/17**


This is to confirm our agreement to amend our Accounts Receivable Financing Agreement, dated January 11, 2012, as subsequently amended. This reduces the ADB rate to .000288 per day. Section 11(b), as hereby amended, is as follows:

> b.  In respect of each new invoice for which funds are loaned, the following rates shall be used to calculate the funding fee withheld from the funds loaned. Interest shall accrue on the average daily outstanding loan balance at the rate of **.000288 per day** (10.5% per annum), and be payable on the "Interest Payment Date" as defined below: Interest Payment Date shall be the first to occur of (i) an advance of funds by FLEXIBLE FUNDING to ILINK BUSINESS MANAGEMENT hereunder, or (ii) the last day of the month in which it accrues.

Additionally, Flexible Funding agrees to charge *no fees* for the first 2 weeks after the date of this amendment.


Paul DeLuca

*Managing Member*
*Flexible Funding*

Gabriel Ayala

*President*
ILINK Business Management Inc.

One Embarcadero Center, Suite 1510  ▪  San Francisco, California  94111
415-391-4320  ▪  800-487-8327  ▪  FAX 415-391-4331

DocuSign Envelope ID: 6EEB9451-DE41-409F-848A-E931F85A67E9



Flexible Funding Ltd. Liability Co

SECURED ACCOMMODATION NOTE – ILINK Business Management, Inc. / Gabriel Ayala

San Francisco, California
December 28, 2018

$90,000.00 (Principle Amount)

For value received (i.e., the removal of $90,000.00 from ILINK's Flexible Funding account, the undersigned promises to pay to Flexible Funding the sum of Ninety Thousand dollars ($90,000.00), with interest from the date of this Note until paid. Interest shall accrue on the Principle Amount, or any portion thereof remaining, at the rate .000288 per day (10.5% APR). Principal and interest shall be due and payable in lawful money of the United States of America, as follows: to be paid in weekly $2000 installments. ILINK hereby agrees that Flexible Funding may debit the weekly installments from ILINK's Flexible Funding account.

All principal and interest, if not sooner paid, shall be due and payable upon any termination or expiration of the Accounts Receivable Financing Agreement between the undersigned and Lender dated as of January 11, 2012 (the "Agreement").

This Note is secured by the security agreement set forth in the Agreement and its Personal Guarantees, and shall also be subject to the terms and conditions of the Agreement, to the extent such terms and conditions are not in contradiction of an express term of this Note. Upon any default, whether under this Note or under the Agreement, the entire principal amount and accrued interest shall at once become due and payable, without notice, at the option of Lender.

If any installment of principal or interest is not paid when due, then the entire sum of principal then unpaid, together with accrued interest on it, shall become immediately due and payable at the option of the Lender without notice. The undersigned further promises to pay all costs of collection, including reasonable attorney's fees incurred in the collection of this Note. The undersigned hereby waives diligence, presentment, protest and demand and notice of every kind and (to the fullest extent permitted by law) the right to plead any statute of limitations as a defense to any demand under this Note or in connection with any security for it.

BORROWER:
ILINK Business Management, Inc
Gabriel Ayala

DocuSigned by:

Signed: _Paul DeLuca_
C7C5070615CE405...

By: Paul DeLuca
FLEXIBLE FUNDING

DocuSigned by:

Signed: _Gabriel Ayala_
A6488EFB7D7B4A8...

By: Gabriel Ayala
ILINK BUSINESS MANAGEMENT, INC.

DocuSign Envelope ID: E3377C01-686B-4857-8A6E-A079221B72F0



December 28, 2018

Gabriel Ayala
ILINK Business Management, Inc.
11650 Mission Parkway Drive
Rancho Cucamonga, CA 91730

**RE: Contract Revision: 12-28-2018**

This is to confirm our agreement to amend our Accounts Receivable Financing Agreement, dated January 11, 2012, as subsequently amended. This revision (1) temporarily increases the *percentage* of invoices eligible for funding to 95% (from 90%) and (2) increases the *age* of eligible invoices to 90 days (from 75 days). Section 11(a), as hereby amended, is as follows:

> 11.      The one time funding fee to be charged on any monies loaned under this agreement shall be calculated as set forth below and as agreed to in the FLEXIBLE FUNDING weekly Loan Report:
>
> > a.      The total amount of funds available to ILINK BUSINESS MANAGEMENT under this open ended credit program shall be the sum equal to **95%** of the aggregate net face amount of all outstanding, unpaid invoices that are (1) not over **90 days** unpaid; (2) have not been disqualified by FLEXIBLE FUNDING for credit or other reason(s); and (3) are not disputed by the CLIENT, minus the amount of any outstanding loan amounts (Hereafter the "Loanable Amount").

The increase in percentage of invoices funded to 95% will expire in six months (June 28, 2018), thereafter reverting to the contractual 90%.

This amendment is effective immediately.

DocuSigned by:

*Paul Deluca*

C7C5070615CE405...

Paul Deluca

*Managing Member*
Flexible Funding

DocuSigned by:

A6488EFB7D7B4A8...

Gabriel Ayala

*President*
ILINK Business Management, Inc.