

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed October 15, 2021



**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FLEXIBLE FUNDING LTD. LIABILITY CO., *et al.*,[1] | § | Case No. 21-42215-11-mxm |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |

### ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF DEBTOR FLEXIBLE FUNDING LTD. LIABILITY CO.'S ASSETS, (B) APPROVING THE FORM AND MANNER OF THE SALE NOTICE, (C) SCHEDULING AN AUCTION AND SALE HEARING, (D) SCHEDULING CERTAIN DEADLINES, AND (E) APPROVING PROCEDURES FOR DETERMINING CURE AMOUNTS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Flexible Funding Ltd. Liability Co. (4495) and InstaPay Flexible, LLC (7648).

Upon consideration of the motion (the "Motion")[2] [Docket No. 73] of Flexible Funding Ltd. Liability Co. ("Flexible Funding") and InstaPay Flexible LLC ("InstaPay") (collectively, the "Debtors") for entry of an order, among other things: (a) establishing Bidding Procedures to sell the Acquired Assets comprising all or substantially all of Flexible Funding's assets; (b) scheduling an Auction to sell the Acquired Assets; (c) scheduling the Sale Hearing; (d) scheduling deadlines for Flexible Funding's receipt of a marked asset purchase agreement; (e) approving the notice of the Sale, the Bidding Procedures, the Auction and the Sale Hearing; (f) establishing procedures for determining Cure Amounts in connection with the assumption and assignment of the Assigned Contracts; and (g) granting other related relief; and it appearing that the relief requested in the Motion as provided herein is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion and opportunity for objection having been given; and it appearing that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**[3]

A.      This Court has jurisdiction over the Motion pursuant to 28 U.S C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue is proper in this District and in this Court pursuant to 28 US.C. §§ 1408 and 1409.

---

[2] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Motion.

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The statutory predicates for the relief requested herein are sections 105(a), 363(b) and (f), 365, 503, and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002(a)(2), 6004(a), (b), (c), (e), and (f), 6006(a) and (c), 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

C.      On or about September 29, 2021, eCapital Corp. or its nominee ("<u>eCapital</u>") executed a letter of intent ("<u>LOI</u>") to acquire the assets of Flexible Funding and become the stalking horse bidder for a sale of such assets pursuant to section 363 of the Bankruptcy Code. A true and correct copy of the LOI was introduced at the bid procedures hearing as Debtors' Exhibit 16.

D.      Notice of the Motion, having been given to the Notice Parties (as defined herein), is sufficient in light of the circumstances and the nature of the relief requested herein.

E.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion to the extent provided herein regarding the sales process, including, without limitation, (1) approval of the Bidding Procedures and, under the circumstances described herein; (2) determination of final Cure Amounts in the manner described herein; and (3) approval and authorization to serve the Sale Notice.

F.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

G.      The Sale Notice, substantially in the form attached hereto as **Exhibit 1** and incorporated herein by reference as if fully set forth in this Order, is reasonably calculated to (1) provide all interested parties with timely and proper notice of the Sale, the Sale Hearing and the Auction and (2) provide all counterparties to the Assigned Contracts with proper notice of the potential assumption and assignment of their executory contract(s) or unexpired lease(s) and any Cure Amounts relating thereto.

H.      Provided that the APA is executed and filed with this Court on or before **5:00 p.m. prevailing Central Time on October 25, 2021**, eCapital is deemed the Stalking Horse Bidder and the Court determines that the Stalking Horse Protections (defined below) (i) constitute actual, necessary costs and expenses of preserving the Flexible Funding's estate within the meaning of section 503(b)(1)(A) of the Bankruptcy Code; (ii) are of substantial benefit to Flexible Funding's estate by, among other things, establishing a bid standard or minimum for other potential purchasers of the Acquired Assets and placing estate property in a sales configuration mode attracting other potential purchasers, (iii) are reasonable and appropriate, including in light of the size and nature of the transactions contemplated by the proposed agreement and the efforts that have been or will be expended by eCapital, notwithstanding that the proposed transaction is subject to higher and better offers, and (iv) were negotiated by the parties at arm's length and in good faith.

I.      In the event an APA with eCapital is timely executed and filed as provided herein and eCapital is ready, willing, and able to close the acquisition of the Acquired Assets under the terms of the APA, but the offer of a competing bidder is accepted and eCapital is not the Prevailing Bidder, the losses suffered by eCapital in such event would be difficult to quantify, and the Stalking Horse Protections (defined below) are a reasonable measure and estimate of eCapital's damages resulting therefrom.

**UPON THE FOREGOING, IT IS HEREBY ORDERED:**

1.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 2**, and incorporated herein by reference as if fully set forth in this Order, are hereby approved. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

2.      The Debtors shall consult with Umpqua Bank (the "Agent") in connection with the qualification of bids or bidders for the Acquired Assets, the Debtors' selection of a

Prevailing Bidder, the drafting and execution of an APA and the drafting of the Sale Order. Notwithstanding the foregoing, however, (a) the Debtors' obligation to consult with the Agent as set forth in this Order and the Bidding Procedures is at all times contingent upon the Agent's having provided to the Debtors a written declaration that the Agent shall not exercise any right it may have, pursuant to section 363(k) of the Bankruptcy Code or otherwise, to credit bid on the Acquired Assets; and (b) the Debtors' authority to take any and all actions necessary or appropriate to implement the Bidding Procedures as granted in this Order is not conditioned upon the consent of any person or entity, including, but not limited to, the Agent.

3.       Unless the Agent has provided to the Debtors a written declaration of the kind referenced above, nothing in this Order shall prohibit the Agent from exercising any right it may have, pursuant to section 363(k) of the Bankruptcy Code or otherwise, to credit bid on the Acquired Assets.

4.       All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

5.       The Sale Notice is hereby approved and shall be served within three (3) business days of entry of this Order upon (a) the United States Trustee; (b) counsel to Umpqua Bank; (c) to Bison Investors, LLC or its counsel; (d) counsel to Medalist Partners Opportunity Master Fund II-A, L.P.; (e) all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service; (f) the United States Department of Justice; (g) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (h) all persons known or reasonably believed to have asserted a Lien on any of the Acquired Assets; (i) the counterparties to each of the Assigned Contracts; (j) all persons known or reasonably believed to have expressed an interest in acquiring the

Acquired Assets; and (k) counsel for eCapital (collectively, the "Notice Parties").

6.       The Sale Notice shall, among other things: (i) identify the potential Assigned Contracts, (ii) specify the Cure Amounts necessary to assume and assign such Assigned Contracts, and (iii) state that failure to timely object to the proposed assumption and assignment and/or the Cure Amount shall constitute deemed consent to such assumption and assignment and Cure Amount.

7.       As further described in the Bidding Procedures, the Debtors shall conduct the Auction on **November 5, 2021**, if a Qualifying Bid (as defined in the Bidding Procedures) is timely received.

8.       Any counterparty to an Assigned Contract who wishes to obtain adequate-assurance information regarding any of the bidders that will or may participate at the Auction must notify the Debtors in writing, c/o Jeff P. Prostok, Esq. and Lynda L. Lankford, Esq., Forshey & Prostok LLP, 777 Main Street, Suite 1550, Fort Worth, Texas 76102, email: jprostok@forsheyprostok.com and llankford@forsheyprostok.com, **on or before November 2, 2021** (the "Request for Adequate Assurance"). The Request for Adequate Assurance must include an email address and/or postal address to which a response to such information request can be sent.

9.       If a counterparty to an Assigned Contract timely submits a Request for Adequate Assurance, the Debtors shall serve such party with any non-confidential information relating to adequate assurance received by the Debtors as provided in the Bidding Procedures by email and/or overnight delivery on or before **November 4, 2021.** A counterparty to an Assigned Contract that timely submits a Request for Adequate Assurance shall have until **5:00 p.m. prevailing Central Time on November 5, 2021**, by which to file an objection to adequate assurance of future performance by any of the bidders. If a counterparty to an Assigned Contract does not timely submit a Request for

Adequate Assurance and does not timely object to adequate assurance of future performance by any of the bidders on or before such time and date, the Court may enter an order forever barring such counterparty to an Assigned Contract from objecting to adequate assurance of future performance.

10.     Except as may otherwise be agreed to by the parties to an Assigned Contract, at the Closing, the Debtors (directly or through the Purchaser(s)), shall cure those defaults under the Assigned Contracts that need to be cured in accordance with the APA and section 365(b) of the Bankruptcy Code, by (a) payment of the undisputed Cure Amounts and/or (b) reserving amounts with respect to any disputed Cure Amounts.

11.     Nothing in this Order shall require the Debtors to select any Prevailing Bidder(s) or to seek Court approval of any sale of the Acquired Assets. At the sole discretion of the Debtors, in consultation with the Agent, the Debtors may adjourn or modify the procedures of the Auction and may entertain and request Court approval of a sale of the Debtors' assets pursuant to a bid for such assets that is not a Qualifying Bid, if the Debtors determine that the interests of the Debtors' estates and creditors would be better served thereby.

12.     If the Debtors select a Prevailing Bidder(s) and determine to seek approval of the Sale to such Prevailing Bidder(s), the Sale Hearing will be conducted on **November 8, 2021, at 9:30 a.m. prevailing Central time**. The Debtors may seek the entry of an order of this Court at the Sale Hearing approving and authorizing the Sale to the highest or best offer at the Auction, on terms and conditions consistent with the submitted APA, as may be amended and modified. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing.

13.     In the event eCapital is ready, willing, and able to close the acquisition of the Acquired Assets under the terms of the APA, timely filed in accordance with this Order, but

the offer of a competing bidder is accepted and eCapital is not the Prevailing Bidder,

(a) eCapital will be reimbursed up to $300,000 for actual and necessary expenses in

connection with its due diligence and documenting of the proposed transaction under the

LOI and any other documents subsequently submitted to the Debtors (the "Expense

Reimbursement") and (b) eCapital will be entitled to a breakup fee of $300,000 as liquidated

damages (the "Breakup Fee"). The Expense Reimbursement and the Breakup Fee are

referred to collectively herein as the "Stalking Horse Protections." The Stalking Horse

Protections shall be entitled to priority as administrative expenses of the Debtors' estates

pursuant to section 503 of the Bankruptcy Code and shall be payable from sale proceeds

from the Closing of the Sale.

14.     Once the Debtors and eCapital execute an APA, the Debtors will file and

serve a copy of such APA, and thereupon the bid protections to eCapital as provided in the

Motion and this Order shall be equally applicable to the LOI and the APA.

15.     Any objection to approval of the Sale and the related relief described herein

must be filed with the Court and served on counsel for the Debtors, the United States

Trustee, and all parties who have requested notice in these cases so as to be actually

received on or before **5:00 p.m. prevailing Central time on November 5, 2021**. Failure to

timely file and serve such an objection may result in the Court's refusal to hear any such

objection at the Sale Hearing.

16.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062,

9014 or otherwise, the terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.

17.     All time periods set forth in this Order shall be calculated in accordance with

Bankruptcy Rule 9006(a).

18.     To the extent that this Order is inconsistent with any prior order or pleading

with respect to the Motion in these cases, the terms of this Order shall govern.

19.    This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of this Order. To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

### END OF ORDER ###

L:\JPROSTOK\Flexible Funding (C11) #6264\Pleadings\Order Approving Flexible Bid Procedures 10.14.21.docx

# EXHIBIT 1

# SALE NOTICE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FLEXIBLE FUNDING LTD. LIABILITY CO., *et al.*,[1] | § | Case No. 21-42215-11-mxm |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |

**NOTICE OF (A) BID DEADLINE, AUCTION, AND SALE HEARING IN CONNECTION
WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR FLEXIBLE
FUNDING LTD. LIABILITY CO.'S ASSETS AND (B) THE DEBTORS' INTENT
TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES IN CONNECTION WITH THE PROPOSED SALE**

NOTICE IS HEREBY GIVEN, as follows:

1.      Flexible Funding Ltd. Liability Co. ("Flexible Funding") and InstaPay Flexible LLC ("InstaPay") (collectively, the "Debtors") seek to sell substantially all of Flexible Funding's assets (the "Acquired Assets").

2.      On or about October 7, 2021, the Debtors filed a Motion pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking approval of among other things, (i) bidding procedures that govern the manner in which the Acquired Assets are to be sold (the "Bidding Procedures"), (ii) scheduling certain dates and deadlines, including an auction date, sale hearing date, and receipt of marked asset purchase agreements, (iii) the form and manner of the sale notice, and (iv) procedures for determining cure amounts and adequate assurance of future performance for the executory contracts to be assumed and assigned (the "Assigned Contracts").

3.      On or about October ___, 2021, the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court"), entered an order (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures, setting key dates and times relating to the sale of the Acquired Assets. As set forth in the Bidding Procedures, the sale of the Acquired Assets is subject to competing offers from any

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Flexible Funding Ltd. Liability Co. (4495) and InstaPay Flexible, Inc. (7648).

prospective qualified bidder. ***All interested potential bidders should carefully read the Bidding Procedures.***

4.      All interested parties are invited to make offers to purchase the Acquired Assets in accordance with the terms of the Bidding Procedures and Bidding Procedures Order, available upon written request from Jeff P. Prostok, Esq. and Lynda L. Lankford, Esq., Forshey & Prostok LLP, 777 Main Street, Suite 1550, Fort Worth, Texas 76102, email: jprostok@forsheyprostok.com and llankford@forsheyprostok.com.

5.      The deadline to submit bids for the Acquired Assets (the "Bid Deadline") is **November 2, 2021**. Pursuant to the Bidding Procedures Order, if the Debtors receive, by the Bid Deadline, more than one bid that meets the qualification standards set forth in the Bidding Procedures (a "Qualifying Bid"), the Debtors will conduct an auction (the "Auction") for the sale of the Acquired Assets on **November 5, 2021, at 1:00 p.m. prevailing Central time.** Only (a) parties and their advisors that have submitted a Qualifying Bid by the Bid Deadline, (b) counsel to the Debtors, and (c) other parties specified in the Bidding Procedures Order will be permitted to participate in and/or make any statements on the record at the Auction. The Auction will be conducted at the offices of Forshey & Prostok LLP, 777 Main Street, Suite 1550, Fort Worth, Texas 76102 and on Zoom. The Debtors reserve the right to change the date or the place of the Auction and will notify Qualifying Bidders if they do so.

6.      The Bidding Procedures Order further provides that a Sale Hearing will be held to confirm the results of the Auction, approve the sale of the Acquired Assets to the successful bidder(s) at the Auction (the "Prevailing Bidder(s)"), and approve the other relief requested in the Motion on **November 8, 2021, at 9:30 a.m. prevailing Central time**, in the courtroom of the Honorable Mark X Mullen, United States Bankruptcy Judge, in the Eldon B. Mahon U.S. Courthouse, 501 W. 10th Street, Fort Worth, TX 76102, or at such time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing. Interested parties may attend the Sale Hearing in person at the courtroom address provided above or virtually using the WebEx connection provided below:

**For WebEx Video Participation/Attendance:**

Link: https://us-courts.webex.com/meet/mullin

**For WebEx Telephonic Only Participation/Attendance:**

Dial-In: 1.650.479.3207

Meeting ID: 474 603 746

7.      Any objection to approval of the Sale and related relief must be filed with the Court and served on counsel for the Debtors, the United States Trustee, and all parties who have requested notice in these cases so as to be actually received on or before **5:00 p.m.**

**prevailing Central time on November 5, 2021**. Failure to timely file and serve such an objection may result in the Court's refusal to hear any such objection at the Sale Hearing.

8.  Pursuant to the Motion and section 365 of the Bankruptcy Code, the Debtors request authority to assume and assign the Assigned Contracts to the Prevailing Bidder(s), and that upon such assumption and assignment the Debtors shall be relieved of any liability under the Assigned Contracts arising after the Closing. Attached hereto as **Exhibit 1** is a schedule of the Assigned Contracts that may be assumed and assigned under the APA, together with the proposed cure amount relating to each Assigned Contract.

9.  Any counterparty to an Assigned Contract who wishes to obtain adequate-assurance information regarding any of the bidders that will or may participate at the Auction must notify the Debtors in writing, c/o Jeff P. Prostok, Esq. and Lynda L. Lankford, Esq., Forshey & Prostok LLP, 777 Main Street, Suite 1550, Fort Worth, Texas 76102, email: jprostok@forsheyprostok.com and llankford@forsheyprostok.com, **on or before November 2, 2021** (the "Request for Adequate Assurance"). The Request for Adequate Assurance must include an email address and/or postal address to which a response to such information request can be sent.

10.  If a counterparty to an Assigned Contract timely submits a Request for Adequate Assurance, the Debtors shall serve such party with any non-confidential information relating to adequate assurance received by the Debtors as provided in the Bidding Procedures by email and/or overnight delivery on or before **November 4, 2021.** A counterparty to an Assigned Contract that timely submits a Request for Adequate Assurance shall have until **5:00 p.m. prevailing Central Time on November 5, 2021**, by which to file an objection to adequate assurance of future performance by any of the bidders. If a counterparty to an Assigned Contract does not timely submit a Request for Adequate Assurance and does not timely object to adequate assurance of future performance by any of the bidders on or before such time and date, the Court may enter an order forever barring such counterparty to an Assigned Contract from objecting to adequate assurance of future performance.

11.  Notice of the Auction and Sale Hearing is subject to the full terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety.

DATED: _____, 2021

Jeff P. Prostok, Esq.
State Bar No. 16352500
Lynda L. Lankford, Esq.
State Bar No. 11935020
**FORSHEY & PROSTOK LLP**
777 Main St., Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com

llankford@forsheyprostok.com

PROPOSED COUNSEL FOR THE DEBTORS AND DEBTORS-IN-POSSESSION

L:\JPROSTOK\Flexible Funding (C11) #6264\Pleadings\Sale Notice Flexible 10.13.21.docx

# EXHIBIT 1

# ASSIGNED CONTRACTS

# EXHIBIT 2

# BIDDING PROCEDURES

**FLEXIBLE FUNDING LTD. LIABILITY CO.**
**BIDDING PROCEDURES**

1.        Overview.  These Bidding Procedures ("Bidding Procedures") outline sale procedures in connection with the sale of substantially all of the assets of Flexible Funding Ltd. Liability Co. (the "Debtor") subject to *Debtors' Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of Flexible Funding Ltd. Liability Co.'s Assets; (B) Approving the Form and Manner of the Sale Notice; (C) Scheduling an Auction and Sale Hearing; (D) Scheduling Certain Deadlines; (E) Approving Procedures for Determining Cure Amounts; and (F) Granting Related Relief; and (II) An Order (A) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Related Relief* [Docket No. 73] (the "Motion"). Interested parties are referred to the Motion and the *Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of Flexible Funding Ltd. Liability Co.'s Assets; (B) Approving the Form and Manner of the Sale Notice; (C) Scheduling an Auction and Sale Hearing; (D) Scheduling Certain Deadlines; and (E) Approving Procedures for Determining Cure Amounts* (the "Bidding Procedures Order") for further information.

2.        Acquired Assets.  The Debtor intends to sell substantially all of the accounts receivable assets of its business as more particularly described in the Motion and Asset Purchase Agreement attached thereto (the "APA"), including client portfolio, lien assignments, contracts, security interests, security agreements, employment contracts as applicable, broker lists/agreements, registrations, books and records of the client portfolio, the "Flexible" name rights, phone number and web domain (the "Acquired Assets").

3. **Interested Bidders**. Any interested bidders should contact the following investment banker retained by the Debtor in connection with the 363 sale process to access the Debtor's virtual data room to review customary due diligence materials, subject to execution of a Non-Disclosure Agreement substantially in the form attached hereto as Exhibit "A."

| CANDLEWOOD PARTNERS, LLC | | |
|---|---|---|
| **Natan Milgrom**<br>Director<br>216.472.6647<br>ndm@candlewoodpartners.com | **Grant Pollack**<br>Associate<br>216.472.6646<br>gyp@candlewoodpartners.com | **Matt Schuen**<br>Associate<br>269.569.5342<br>ms@candlewoodpartners.com |

4. <u>Notice by Mail</u>. Within three (3) business days after entry of the Bidding Procedures Order, the Debtors shall serve by first class mail, postage prepaid, copies of the Sale Notice, substantially in the form attached to the Motion as Exhibit E, upon the following entities (collectively, the "<u>Notice Parties</u>"):

    a. the United States Trustee;

    b. counsel to Umpqua Bank;

    c. counsel to Bison Investors, LLC;

    d. counsel to Medalist Partners Opportunity Master Fund II-A, L.P.;

    e. all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service;

    f. the United States Department of Justice;

    g. all parties that have requested special notice pursuant to Bankruptcy Rule 2002;

    h. all persons known or reasonably believed to have asserted a Lien on any of the Acquired Assets;

      i.   the counterparties to each of the Assigned Contracts;

      j.   all persons known or reasonably believed to have expressed an interest in acquiring the Acquired Assets; and

      k.   counsel for eCapital.

5.    <u>Assigned Contracts—Adequate Assurance (1)</u>. Any counterparty to an Assigned Contract who wishes to obtain adequate-assurance information regarding any of the bidders that will or may participate at the Auction must notify the Debtors in writing, c/o Jeff P. Prostok, Esq. and Lynda L. Lankford, Esq., Forshey & Prostok LLP, 777 Main Street, Suite 1550, Fort Worth, Texas 76102, email: <u>jprostok@forsheyprostok.com and llankford@forsheyprostok.com</u>, **on or before November 2, 2021** (the "<u>Request for Adequate Assurance</u>"). The Request for Adequate Assurance must include an email address and/or postal address to which a response to such information request can be sent.

6.    <u>Assigned Contracts—Adequate Assurance (2)</u>. If a counterparty to an Assigned Contract timely submits a Request for Adequate Assurance, the Debtors shall serve such party with any non-confidential information relating to adequate assurance received by the Debtors as provided in the Bidding Procedures by email and/or overnight delivery on or before **November 4, 2021.** A counterparty to an Assigned Contract that timely submits a Request for Adequate Assurance shall have until **5:00 p.m. prevailing Central Time on November 5, 2021**, by which to file an objection to adequate assurance of future performance by any of the bidders. If a counterparty to an Assigned Contract does not timely submit a Request for Adequate Assurance and does not timely object to adequate assurance of future performance by any of the bidders on or before such time and date, the Court may enter an order forever barring such counterparty to an Assigned Contract from objecting to adequate assurance of future performance.

7.    <u>Assigned Contracts—Cure of Defaults</u>. Except as may otherwise be agreed

to by the parties to an Assigned Contract, at the Closing, the Debtors (directly or through the

Purchaser(s)), shall cure those defaults under the Assigned Contracts that need to be cured

in accordance with the APA and section 365(b) of the Bankruptcy Code, by (a) payment of

the undisputed Cure Amounts and/or (b) reserving amounts with respect to any disputed

Cure Amounts.

8.      Qualifying Bidder. To be a Qualifying Bidder and thereby to be allowed to

participate in the Auction and be eligible to be the Prevailing Bidder, any potential Purchaser

must submit a Qualifying Bid, defined as an offer to purchase the Acquired Assets

(a) with an initial overbid of not less than $1,000,000 and subsequent overbids in increments of not less than $250,000;

(b) using the same form of APA (including all schedules) as eCapital Corp. ("eCapital") and to purchase the same assets on the same terms or more favorable terms for the Debtor as eCapital;

(c) accompanied by a good faith deposit of not less than $4,500,000 (which shall be refunded in the event such bidder is neither the Prevailing Bidder nor the Back-Up Bidder (defined below)) and reasonable evidence of financial ability to close the purchase of the Acquired Assets within the time frame set forth below, including sufficient financial or other information to establish adequate assurance of future performance with respect to any Assigned Contracts;

(d) accompanied by a declaration that such offer is irrevocable until the closing of the Sale if such Qualifying Bidder is the Prevailing Bidder, and that the Qualifying Bidder agrees to serve as a Back-Up Bidder if such bidder's Qualifying Bid is selected as the next highest or otherwise next best bid (the "Back-Up Bid" and the Qualifying Bidder making the Back-Up Bid, the "Back-Up Bidder");

(e) accompanied by a declaration that the Qualifying Bidder has the appropriate corporate authorization to submit the bid and consummate the proposed Sale, and that such bidder is willing and able to close no later than three (3) business days after the Effective Date of an Order approving the winning bid. The Effective Date of such an Order is defined as the first day on which such an Order has been entered by the Court and is not subject to any stay of effectiveness, whether such stay is prescribed by Bankruptcy Rule 6004(h), Bankruptcy Rule 6006(d), or the order of any court; and

(f) submitted so as to be actually received by the Debtors and their counsel **on or before November 2, 2021**.

9.      <u>The Auction</u>. The Auction will take place at the offices of Forshey & Prostok LLP, 777 Main St., Suite 1550, Fort Worth, TX 76102 and on Zoom at **1:00 p.m., prevailing Central time, on November 5, 2021**. Only eCapital and any Qualifying Bidder(s) may participate at the Auction and be eligible to be the Prevailing Bidder, and counsel for the Agent and the United States Trustee may attend the Auction. At the Auction, any subsequent overbids must be in increments of not less than $250,000. Upon completion of the Auction, the Debtors may (but shall not be required to) select a Prevailing Bidder in light of all relevant considerations.

10.      <u>Back-Up Bidding</u>. At the conclusion of the Auction, the Debtors, in consultation with the Agent, may (but shall not be required to) designate the second highest Qualifying Bidder to serve as the Back-Up Bidder, in which case such Qualifying Bidder shall remain obligated to close the Sale on the terms set forth in the Back-Up Bid in the event that the Sale with the Prevailing Bidder does not close. The Back-Up Bidder shall be obligated to close on the Back-Up Bid until four (4) business days after the closing date of any Sale, or such other time period as agreed to by the Back-Up Bidder and the Debtors, in consultation with the Agent (the "<u>Back-Up Release Date</u>"). The deposit provided by the Back-Up Bidder shall be returned to the Back-Up Bidder within one business day after the Back-Up Release Date, provided that the Debtors may, in the exercise of their business judgment and in consultation with the Agent, return any deposit provided by the Back-Up Bidder prior to the Back-Up Release Date.

11.      <u>Stalking Horse Protections</u>. In the event the APA with eCapital is timely executed and filed as provided in the Bidding Procedures Order and eCapital is ready, willing, and able to close the acquisition of the Acquired Assets under the terms of the APA,

but the offer of a competing bidder is accepted and eCapital is not the Prevailing Bidder, eCapital will be reimbursed up to $300,000 for actual and necessary expenses in connection with its due diligence and documenting of the proposed transaction under the LOI and any other documents subsequently submitted to the Debtors (the "Expense Reimbursement") and (b) eCapital will be entitled to a breakup fee of $300,000 as liquidated damages (the "Breakup Fee").  The Expense Reimbursement and the Breakup Fee are referred to collectively herein as the "Stalking Horse Protections." The Stalking Horse Protections shall be entitled to priority as administrative expenses of the Debtors' estates pursuant to section 503 of the Bankruptcy Code.

12.     Bid Protections Applicable to LOI and APA.  Once the Debtor and eCapital execute an APA, the Debtors will file and serve a copy of such APA, and thereupon the bid protections to eCapital as provided in the Motion and the Bidding Procedures Order shall be equally applicable to the LOI and the APA.  Once the APA has been executed and filed, a Word version of such APA (together with applicable Schedules and Exhibits) will be made available in the virtual data room.

13.     Hearing to Approve the Sale. The Debtors request that the Court set a hearing to consider approval of the Sale at the Court's earliest convenience after completion of the Auction.

# EXHIBIT "A"

# NON-DISCLOSURE AGREEMENT

FLEXIBLE FUNDING LTD. LIABILITY CO.

INSTAPAY FLEXIBLE LLC

[Date]

[Contact]

[Company]

[Address]

[City, State, Zip]


RE:  Confidentiality Agreement

Dear _____:

You have expressed an interest in reviewing certain proprietary information relating to certain assets relating to the bankruptcy estates of Flexible Funding Ltd. Liability Co. and InstaPay Flexible LLC (collectively, the "Debtors") in connection with a possible acquisition by or engagement of you or your affiliates to acquire such assets (a "Transaction"). As used herein, the pronouns "you" and "your" refer to [COMPANY NAME], and the pronouns "we," "us," and "our" refer to the Debtors. As used herein, all reference to the bankruptcy involving the Debtors is intended to refer to Case Nos. 21-42214-11-elm and 21-42215-11-mxm, each filed in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), and administratively consolidated under Case No. 21-42215-11-mxm.

As a condition to furnishing you with such proprietary information, the Debtors require that you agree, as set forth below, to treat confidentially such information and any other information relating to the Debtors or the assets referenced above (collectively, the "Evaluation Material") which we or any of our representatives or agents may furnish to you or your agents, affiliates, financing sources, co-investors, partners, representatives (including advisors, attorneys, accountants, consultants and advisors), directors, officers, or employees (collectively, but only those such persons who actually receive the Evaluation Material, your "Representatives"). We acknowledge that your employees or those of your affiliates may serve as directors or officers of your portfolio companies, and such portfolio companies will not be deemed to have received Evaluation Material solely due to the dual role of such employee, so long as such employee does not provide any Evaluation Material to the other directors or officers or employees of such portfolio companies. The term "Evaluation Material" will also include all portions of analyses, compilations, studies, or other documents prepared by our

[Date]

Page 2

representatives or by you or your Representatives containing or based in whole or in part on any information furnished by us. The term "Evaluation Material" does not include information that (i) is or becomes available to the public other than as a result of a disclosure by you or your Representatives in violation of this Agreement, (ii) was available to you or any of your Representatives on a non-confidential basis prior to its disclosure to you by us, (iii) becomes available to you or any of your Representatives from a source other than us, *provided, however*, that such source is not actually known by you to be bound by a confidentiality obligation to us or the Debtors, (iv) is independently developed by you or any of your Representatives without use of the Evaluation Material, or (v) has been or must be disclosed pursuant to law, regulatory authority, court order, subpoena, or other legal process.

You agree that the Evaluation Material will be kept confidential by you and your Representatives, and shall not, except as hereinafter provided, without our prior written consent, be disclosed by you or your Representatives. Moreover, you further agree to transmit Evaluation Material only to those of your Representatives who (a) have a legitimate need to have access to such Evaluation Material in order to assist you in your evaluation of the Transaction, and (b) are bound by an obligation of confidentiality to you sufficient to ensure compliance with the terms of this Agreement. You further agree that the Evaluation Material shall be used strictly and solely for the purpose of evaluating the Transaction and that you and your Representatives shall not make any other use whatsoever of the Evaluation Material. Finally, you agree that you shall be responsible for any breach of this Agreement by your Representatives; *provided, however*, that you shall not be so responsible with respect to any Representative who executes a separate confidentiality agreement directly with us in connection with the Transaction.

In the event that you or any of your Representatives are requested or required by applicable law (including, without limitation, by deposition, interrogatories, requests for information or documents in legal, regulatory or self-regulatory proceedings, subpoena, civil investigative demand or other similar process) (collectively, "<u>Law</u>") to disclose any of the Evaluation Material or the fact that the Evaluation Material has been made available to you, that discussions or negotiations between you and us are taking or have taken place or any of the terms, conditions or other facts with respect to the discussions or negotiations, you shall provide us with prompt written notice (unless prohibited by Law) of any such request or requirement so that we may, at our sole expense, seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. In the event that such a protective order or other remedy is not obtained, or that compliance with the terms of this Agreement is waived, you agree that you will furnish only that portion of the Evaluation Material and other

[Date]

Page 3

information which is, based on the advice of your counsel, legally required, provided that you exercise commercially reasonable efforts to preserve the confidentiality of the Evaluation Material and other information, including, without limitation, by using commercially reasonable efforts to cooperate with us to obtain reliable assurances that confidential treatment will be accorded the Evaluation Material and other information being disclosed.

You will promptly, upon our written request, deliver to us or destroy (at your option) the Evaluation Material and all copies thereof, except that you and your Representatives shall be entitled to retain copies of the Evaluation Material to the extent necessary to comply with applicable law or established document retention policies, provided that such copies will be held by you or your Representatives, as applicable, and kept confidential subject to the terms of this Agreement.

In the event that you make a proposal with respect to the Transaction, whether written or oral, we hereby agree that such proposal, including the valuation, structure, terms, and conditions (including the existence of such proposal and your identity), as well as the fact that discussions or negotiations are taking place concerning such proposal or any other transactions contemplated thereby or the status thereof, are confidential and are not to be disclosed to anyone, including any other potential purchasers, without your prior written consent, except that such information may be disclosed (i) if required by Law; or (ii) to our respective affiliates, directors, officers, employees, agents and representatives (including attorneys, accountants, consultants, and advisors) (collectively, "Debtor Representatives") who need to know such information for the purposes of evaluating such proposal and who are bound by an obligation of confidentiality to keep such information confidential; or (iii) to the Bankruptcy Court in connection with the approval of such Transaction. In addition, such confidential information may not be used by us or any Debtor Representatives for any purpose other than for the evaluation of a proposal from you. We agree that our delivery of Evaluation Material signifies our consent to the terms of this paragraph.

The execution of this Agreement or the delivery of the Evaluation Material hereunder shall under no circumstances be construed as creating or imposing any additional or future commitment, right, obligation, liability, or duty whatsoever for either party in connection with the proposed Transaction.

Except as may be set forth in a definitive agreement, we do not make any representation or warranty, expressed or implied, as to the accuracy or completeness of the Evaluation Material, which is provided "as-is" and "with all faults." You agree that neither we nor any of our representatives shall have any liability under this Agreement

[Date]

Page 4

to you or your Representatives resulting from the use by you or your Representatives of the Evaluation Material, or any errors therein or omissions therefrom. It is further understood and agreed that no failure or delay by us in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power, or privilege hereunder. Also, it is agreed that we shall be entitled to seek equitable relief, including injunction and specific performance, in the event of any breach of the provisions of this Agreement.

This Agreement shall terminate upon the earlier of twelve (12) months after the date hereof or the date we consummate the Transaction contemplated by this Agreement. However, the expiration or termination of this Agreement for any reason shall not relieve you of your obligation to preserve the Evaluation Material received prior to the expiration or termination of this Agreement in confidence as provided herein.

You agree that, during the term of this Agreement, you and your officers, directors, shareholders, members, employees, and agents shall not, directly or indirectly or by action in concert with others, solicit, induce or influence (or attempt to induce or influence) any customer, client, contract party, or other person or entity that has a business relationship with the Debtors to commence a business relationship with you. You further agree that during the term of this Agreement, you and your officers, directors, shareholders, members, employees, and agents shall not, directly or indirectly or by action in concert with others, solicit, induce or influence (or seek to induce or influence)  any person who is engaged (as a regular, temporary, introductory, full-time or part-time, executive, employee, agent, independent contractor, or otherwise) by the Debtors to terminate his or her employment or engagement with the Debtors.

It is recognized that the delivery, study, and discussions of the Evaluation Material contemplated hereunder may entail considerable expense to each party. It is agreed that each party shall bear all costs incurred by it in the performance of this Agreement and that no party shall have any right to any reimbursement or payment or compensation or any kind from the other pertaining to the delivery, study, and consideration of the Evaluation Material, unless specifically agreed otherwise in writing.

This Agreement contains the entire understanding between the parties, superseding all prior or contemporaneous communications, agreements, and understandings between the parties with respect to the delivery and protection of the Evaluation Material in connection with the Transaction, and may not be amended or

[Date]

Page 5

modified except by subsequent agreement in writing by duly authorized representatives of the parties.

This Agreement (i) shall be governed by the laws of the State of Texas and (ii) may be executed in several counterparts, all of which together shall constitute one and the same agreement. BY SIGNING THIS AGREEMENT, BOTH PARTIES KNOWINGLY, VOLUNTARILY, AND INTENTIONALY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT. Further, by signing this Agreement, both parties hereby agree that exclusive venue for any legal proceeding arising out of or relating to this Agreement shall be in the Bankruptcy Court, and hereby consent to the jurisdiction of the Bankruptcy Court to hear and determine any dispute arising under or relating to this Agreement.

If you are in agreement with the foregoing, please sign and return one copy of this Agreement, which will constitute our agreement with respect to the subject matter hereof.

Sincerely,

AGREED:

[COMPANY NAME]

By: _____

Name [Type]: _____

Title [Type]: _____