**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FLEXIBLE FUNDING LTD. LIABILITY CO., | § | |
| *et al.,* | § | Case No. 21-42215-mxm-11 |
| | § | |
| Debtors. | § | |
| | § | (Jointly Administered) |

~~CHAPTER~~AMENDED CHAPTER **11 JOINT PLAN OF LIQUIDATION FOR FLEXIBLE**
**FUNDING LTD. LIABILITY CO. AND INSTAPAY FLEXIBLE, LLC**

Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
Dylan T.F. Ross
State Bar No. 24104435
**FORSHEY PROSTOK LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
llankford@forsheyprostok.com
dross@forsheyprostok.com

**ATTORNEYS FOR DEBTORS**
**AND DEBTORS-IN-POSSESSION**

DATED: ~~April 18~~May 17, 2022

## ARTICLE I.
## DEFINITIONS

**Defined Terms**. In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01. "Administrative Bar Date" means the deadline to file Claims for Allowance as an Administrative Expense set forth in subsection 3.01(b) of the Plan.

1.02. "Administrative Expense" means any cost or expense of administration of the Chapter 11 Cases allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtors, any actual and necessary expenses of operating the business of the Debtors, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930, chapter 123 of title 28 of the United States Code.

1.03. "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.04. "Allowed," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; *provided, however*, that if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "Allowed," when used with respect to an Administrative Expense, means an Administrative Expense approved by application to the Bankruptcy Court.

1.05. "Applicable Plan Distribution Date," when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article VII of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Article VII of this Plan applicable to each such Claim. The Applicable Plan Distribution Date shall be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim becomes an Allowed Claim.

1.06. 1.05. "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtors through the

Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.

1.07. 1.06.    "Avoidance Action" means a cause of action assertable by the Debtors pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code. Such causes of action may be asserted to recover, among other things, the transfers listed in the Debtors' respective Schedules, including in response to Question 3Questions 3, 4, 13 and 30 of the Statements of Financial Affairs.

1.08. 1.07.    "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

1.09. 1.08.    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code.

1.10. 1.09.    "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or such other court having jurisdiction over all or any part of the Chapter 11 Cases.

1.11. 1.10.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including applicable local rules of the Bankruptcy Court.

1.12. 1.11.    "Bar Date" means the date by which any Person (other than a governmental unit) who wishes to assert a Claim in the Chapter 11 Cases must file a proof of Claim. As of the date of this Plan, the The Bar Date iswas December 22, 2021.

1.13. 1.12.    "Bison" means Bison Investors, LLC.

1.14. 1.13.    "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.15. 1.14.    "Cash" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.16. 1.15.    "Chapter 11 Cases" refers collectively to the case of Flexible Funding Ltd. Liability Co., Case No. 21-42215-11-mxm, and the case of Instapay Flexible, LLC, Case No. 21-42214-11-mxm, which are being jointly administered in the Bankruptcy Court under Case No. 21-42215-11-mxm.

1.17. 1.16.    "Claim" means (a) a right to payment against the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy against the Debtors for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.18  1.17.    "Claimant" means the holder of a Claim.

1.19  1.18.    "Class" means a class of Claims or Interests as described in the Plan.

1.20  1.19.    "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.21  1.20.    "Confirmation Date" means the date of entry of the Confirmation Order.

1.22  1.21.    "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.23  1.22.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.24  1.23.    "Contested," when used with respect to a Claim, means (a) a Claim: (a) that is listed in the Debtors' Schedules as disputed, contingent, and/or unliquidated; or in the amount of $0.00 or "Unknown"; (b) that is listed in the Debtors' Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; and (c) allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection. (c) that is not listed on the Schedules of a Debtor, regardless of whether a proof of Claim has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) for which the proof of Claim is filed after the applicable Bar Date; provided, however, that all Claims shall be deemed as Contested until the applicable Objection Deadline has passed.  In addition, any Claim which is subject to an Objection or other pleading seeking either subordination (whether equitable or otherwise) or recharacterization of such Claim, including pursuant to section 510(c) of the Bankruptcy Code, shall likewise be deemed to constitute a Contested Claim until such Objection has been resolved by a Final Order

1.25  1.24.    "Creditor" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.26  1.25.    "Cure Claim" means the payment or other performance required to

cure any existing default under an Executory Contract.

1.27 1.26.   "De Minimis Claim" means a Claim or Estate Claim or cause of action where the amount demanded or claimed is, in the aggregate, less than or equal to $100,000.

1.28 1.27.   "Debtors" means, collectively, Flexible and Instapay, the debtors in the Chapter 11 Cases.

1.29 1.28.   "Disallowed," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an objection or motion to disallow has been sustained by a Final Order.

1.30 1.29.   "Disclosure Statement" means the Disclosure Statement filed with respect to the Plan, as it may be amended, modified, or supplemented from time to time.

1.31 1.30.   "Distributable Cash" means all Cash held by the Liquidating Debtors on or after the Effective Date after payment of Allowed Administrative Expenses, Allowed Priority Tax Claims, U.S. Trustee's fees, Allowed Secured Tax Claims, and Allowed Priority Non-Tax Claims, less any reasonable reserve for Contested Claims and, payment of costs of administration. and any other Reserves.

1.32 1.31.   "Distribution" means any payment or other disbursement of property pursuant to the Plan.

1.33 1.32.   "Effective Date" means the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in section 12.01 below are satisfied.

1.34 1.33.   "Estate" shall collectively refer to the bankruptcy estates of the Debtors in the Chapter 11 Cases.

1.35 1.34.   "Estate Accounts Receivable" shall include all accounts receivable of the Estate, including from all sums payable to the Debtors on account of goods or, services or loans provided by the Debtors.

1.36 1.35.   "Estate Claims" shall include all claims and causes of action held by the Debtors' Estate, including, without limitation, all Estate Accounts Receivable, the Estate Claims listed on the attached **Exhibit A**, and all Avoidance Actions.

1.37 1.36.   "Estate Defenses" means all defenses, affirmative defenses, counterclaims, or offsets rights offset or recoupment by the Debtors' Estates against any Person, including but not limited to any Creditor.  Estate Defenses shall also include all applicable privileges with respect thereto, including the attorney-client privilege and work

product privilege.

1.38. 1.37.    "Estate Professionals" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 363, and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

1.39. 1.38.    "Executory Contract" means any executory contract or unexpired lease to which either of the Debtors is a party and which is subject to section 365 of the Bankruptcy Code.

1.40. 1.39.    "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.41. 1.40.    "Flexible" means Flexible Funding Ltd. Liability Co.

1.42. 1.41.    "General Unsecured Claim" means any Claim that is not an Administrative Expense, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Tax Claim, a Subordinated Secured Claim, or an Other Secured Claim, but includes any Rejection Claim pursuant to section 502(g) of the Bankruptcy Code.

1.43. 1.42.    "Governmental Unit" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

1.44. 1.43.    "Impaired" means, when used with reference to a Class of Claims or Interests, a Class that is impaired as such term is defined in section 1124 of the Bankruptcy Code.

1.45. 1.44.    "Instapay" means Instapay Flexible, LLC.

1.46. 1.45.    "Interests" means any equity or stock ownership interest in the Debtors.

1.47. 1.46.    "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors contemplated by section 101(37) of the Bankruptcy Code.

1.48. 1.47.    "Liquidating Debtors" means how the Debtors will be referred to on and after the occurrence of the Effective Date of this Plan.

1.49. 1.48.    "Medalist" means Medalist Partners Opportunity Master Fund II-A, L.P.

1.50. 1.49.    "Objection" means (a) an objection to the allowance of a Claim

interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.51 1.50.   "Objection Deadline" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.52 1.51.   "Other Secured Claim" means any Secured Claim that is not a Secured Tax Claim or a Subordinated Secured Claim.

1.53 1.52.   "Oversight Committee" means the committee established pursuant to section 6.14 of the Plan.

1.54 1.01.   "Plan Administrator" means the person appointed and designated as the Plan Administrator effective on the Effective Date, and any successor Plan Administrator appointed as provided herein.

1.55 1.53.   "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.56 1.54.   "Petition Date" means September 19, 2021.

1.57 1.55.   "Plan" means this chapter 11 joint plan of liquidation, either in its present form or as it may be altered, amended, or modified from time to time.

1.56.   "Plan Administrator" means the person appointed and designated as the Plan Administrator effective on the Effective Date, and any successor Plan Administrator appointed as provided herein.

1.58 1.57.   "Plan Distribution Date" has the meaning set forth in section 7.02 of the Plan.

1.59 1.58.   "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court.

1.60 1.59.   "Post-Confirmation Estate" means the estate of the Liquidating Debtors which include the Assets transferred by the Debtors to and vested in the Liquidating Debtors pursuant to the terms of this Plan.

1.61 1.60.   "Priority Claim" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.62 1.61. "Priority Non-Tax Claim" means any Priority Claim that is not a Priority Tax Claim or an Administrative Expense Claim.

1.63 1.62. "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.64 1.63. "Pro Rata Distribution" means a Distribution of a Pro Rata Share made in accordance with Article IV of the Plan. Each holder or a Claim or Interest entitled to receive a portion of a Pro Rata Distribution shall receive such holder's Pro Rata Share of such Distribution.

1.65 1.64. "Pro Rata Share" means, as to the holder of a specific Claim or Interest, the ratio that the amount of such holder's Claim or Interest bears to the aggregate amount of all Claims or Interests included in the particular Class or category in which such holder's Claim or Interest is included.

1.66 1.65. "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

1.67 1.66. "Reserve" or "Reserves" means any Cash reserves set aside by the Liquidating Debtors pursuant to this Plan, including reserves set aside to fund any Distributions, make payments pursuant to the Plan, or pursue the Estate Claims.

1.68 1.67. "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.69 1.68. "Secured Claim" means (a) a Claim secured by a Lien against any Assets, to the extent such Lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets that secures payment of the Claim (except, if the holder of such Claim timely makes the election provided for in section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim shall be treated as Secured Claim), or (b) a Claim that is subject to a valid right of setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to setoff as provided in section 506(a) of the Bankruptcy Code.,.

1.70.1.01. "Subordinated Secured Claim" means any Secured Claim held by Bison Investors, LLC or Medalist Partners Opportunity Master Fund II-A, L.P.

1.71 1.69. "Secured Tax Claim" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.70. "Subordinated Secured Claim" means any Secured Claim held by Bison

Investors, LLC or Medalist Partners Opportunity Master Fund II-A, L.P.

1.72. 1.71.     "Substantial Consummation" means the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of the Plan.

1.73. 1.72.     "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.74. 1.73.     "Unclaimed Property" means any cash, Distribution, or any other property of the Debtors unclaimed for a period of one (1) year after the applicable Plan Distribution Datewas made.

1.75. 1.74.     "Unimpaired" means, when used with reference to a Class of Claims or Interests, a Class that is not impaired as such term is defined in section 1124 of the Bankruptcy Code.

**Interpretation**. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

**Other Terms**. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

**Exhibits and Plan Documents**. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1550, Fort Worth, Texas 76102, Attention: Jackie JonesTandi Levario; fax number (817) 877-4151; email: jjonestlevario@forsheyprostok.com.

**ARTICLE II.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

2.01.   The following is a designation of the Classes of Claims and Interests under the Plan. Administrative Expenses, Priority Claims of the kinds specified in sections 507(a)(2) and 507(a)(3) of the Bankruptcy Code and Priority Tax Claims have not been

classified, are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and the treatment of such Claims is set forth in Article III of the Plan. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

> Class 1 – Priority Non-Tax Claims
> Class 2 – Secured Tax Claims
> Class 3 – Subordinated Secured Claim – Bison
> Class 4 – Subordinated Secured Claim - Medalist
> Class 5 – Other Secured Claims
> Class 6 – General Unsecured Claims
> Class 7 – Interests

2.02.   Impaired Classes of Claims and Interests. Classes 1 and 2 are Unimpaired. Classes 3, 4, 5, 6 and 7 are Impaired.

2.03.   Impairment or Classification Controversies. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

# ARTICLE III.
## TREATMENT OF UNCLASSIFIED CLAIMS

3.01.   Administrative Expenses

(a)    The Liquidating Debtors shall pay, in accordance with the ordinary business terms applicable to each such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtors' businesses or administering the Estate before the Effective Date ("Ordinary Course Claims"). The remaining provisions of this section 3.01 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the Liquidating Debtors may move the Bankruptcy Court to apply the provisions of Article IX below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through the Chapter 11 Cases.

(b)    Unless the Bankruptcy Court orders to the contrary or the Liquidating Debtors agree to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense that is already Allowed, shall file with the Bankruptcy Court and serve upon the Liquidating Debtors and itstheir counsel a written request for payment of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the "Administrative Bar Date."  Such written request shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such

Claim. **Failure to timely and properly file and serve such request by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution from the Liquidating Debtors on account of such Claim for an Administrative Expense**.

(c)    A Claim for an Administrative Expense, for which a proper request for payment was filed and served under subsection 3.01(b) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such request. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(d)    The procedures contained in subsections 3.01(b) and (c) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 3.01(f) below . Professional fees and expenses of any Estate Professional incurred on or after the Effective Date may be paid by the Liquidating Debtors without necessity of application to or order by the Bankruptcy Court.

(e)    If the Liquidating Debtors assert any Estate Claims as counterclaims or defenses to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

(f)    Each holder of an Allowed Administrative Expense shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Liquidating Debtors, or as otherwise ordered by the Bankruptcy Court.

3.02.    <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim shall receive (a) one Cash payment in an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Liquidating Debtors.

3.03.    <u>U.S. Trustee's Fees</u>. The Liquidating Debtors shall pay the U.S. Trustee's quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) which are due as of the

Confirmation Date in full on the Effective Date or as soon thereafter as is practicable. After the Confirmation Date, the Liquidating Debtors shall continue to pay quarterly fees as they accrue until a final decree is entered and the Chapter 11 Cases are closed. The Liquidating Debtors shall file with the Bankruptcy Court and serve on the U.S. Trustee quarterly financial reports for each quarter, or portion thereof, that the Chapter 11 Cases remain open.

## ARTICLE IV.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.01.   Class 1 – Priority Non-Tax Claims. Each holder of an Allowed Priority Non-Tax Claim shall receive, (a) on or beforeas soon practicable after the applicable Plan DistributionEffective Date, one Cash payment in an amount equal to the amount of such Allowed Priority Non-Tax Claim or (b) such other treatment as may be agreed to in writing by the holder of such Allowed Priority Non-Tax Claim and the Liquidating Debtors. Class 1 is Unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.02.   Class 2 – Secured Tax Claims. Each holder of an Allowed Secured Tax Claim shall receive, (a) on or before the Applicable Plan Distributionas soon as practicable after the Effective Date, one Cash payment in an amount equal to the principal amount of such Allowed Secured Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Secured Tax Claim may be paid without penalty, or (b) such other treatment as may be agreed to in writing by the holder of the Allowed Secured Tax Claim and the Liquidating Debtors. The Liens securing each such Allowed Secured Tax Claim shall remain in full force and effect until such Class 2 Claim is paid in full. Class 2 is Unimpaired. Holders of Class 2 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

4.03.   Class 3 – Subordinated Secured Claim - Bison.

Bison's Claim against the Estate is secured by a blanket lien in all assets of Flexible. Bison asserts that its liens against and security interest in and to the assets of Flexible is superior to, and has priority over, the liens and security interests in the same collateral held by Medalist.  Accordingly, Bison asserts that its Claim should be paid in full from available Distributable Cash (after payment in full of Allowed Administrative Expenses, Allowed Priority Tax Claims, U.S. Trustee fees, Secured Tax Claims, and Priority Non-Tax Claims, and Other Secured Claims) prior to any Distribution may bebeing made to the Class 4 Claim of Medalist (the "Bison/Medalist Priority Dispute").

Bison and Medalist are seeking to either initiate an adversary proceeding or proceed by motion in the Bankruptcy Court for a determination of the priority of liens as between the two parties.  Accordingly, Distributions to Class 3 and Class 4 from Distributable Cash will be subject to the decision of the Bankruptcy Court on the priority of liens, or by compromise or settlement between Bison and Medalist.

Pending the outcome of the Bankruptcy Court's determination, or by agreement of

the parties, of the lien priority between Bison and Medalist, on the Effective Date, the Plan Administrator shall establish a reserve from available Distributable Cash (the "Bison/Medalist Reserve"), in an amount to be determined by the Plan Administrator, earmarked for Distribution to Bison and/or Medalist, as appropriate.  From and after the Effective Date, no further interest under Bankruptcy Code section 506(b), to the extent such section is applicable, shall accrue with respect to the amount held in the Bison/Medalist Reserve.

4.04.   Class 4 – Subordinated Secured Claim – Medalist.

Medalist's Claim against the Estate is secured by liens against and security interests in the assets of both Flexible and Instapay.  Contrary to Bison's contention as set forth in section 4.03 above, Medalist asserts that its liens against and security interests in the assets of Flexible are on equal priority with Bison. As such, Medalist contends that Bison and Medalist should be paid *pro rata* from available Distributable Cash (after payment in full of Allowed Administrative Expenses, Allowed Priority Tax Claims, U.S. Trustee fees, Secured Tax Claims, and Priority Non-Tax Claims, and Other Secured Claims) until the Allowed Claims of Bison and Medalist in Classes 3 and 4 are paid in full or until Distributable Cash is exhausted.

Bison and Medalist are seeking to either initiate an adversary proceeding or proceed by motion in the Bankruptcy Court for a determination of the priority of liens as between the two parties.  Accordingly, Distributions to Class 3 and Class 4 from Distributable Cash will be subject to the decision of the Bankruptcy Court on the priority of liens, or by compromise or settlement between Bison and Medalist.

Pending the outcome of the Bankruptcy Court's determination, or by agreement of the parties, of the lien priority between Bison and Medalist, on the Effective Date, the Plan Administrator shall establish the Bison/Medalist Reserve.  From and after the Effective Date, no further interest under Bankruptcy Code section 506(b), to the extent such section is applicable, shall accrue with respect to the amount held in the Bison/Medalist Reserve.

4.05.   Class 5 – Other Secured Claims. Once Classes 1 to 4 have been paid in full, on the applicable Plan Distribution Date, each holder of an Allowed Other Secured Claim shall receive, at the option of the Liquidating Debtors, (a) receive Cash in an amount equal to such Allowed Other Secured Claim from remaining Distributable Cash, to the extent available, (b) receive the collateral securing its Allowed Other Secured Claim, or (c) such other treatment as may be agreed to in writing by the Holderholder of an Allowed Other Secured Claim and the Liquidating Debtors.  Class 5 is Impaired.  Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

4.06.   Class 6 – General Unsecured Claims. Each holder of a Class 6an Allowed General Unsecured Claim shall receive, on or before the applicable Plan Distribution Date, a Pro Rata Share of the Distributable Cash remaining, if any, after Classes 1 through 5 have been paid in full in accordance with the treatment provided in the Plan to such Classes. Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

4.07.   Class 7 – Interests. On the Effective Date, the holders of Interests in the Debtors shall have no ability to direct or control the affairs of the Liquidating Debtors. Holders of interestsInterests, however, shall be permitted to serve on the Oversight Committee.  Unless all holders of Allowed Claims in Classes 1 through 6 are paid in full, holders of Allowed Class 7 Interests will not receive any payment on their respective Interests. After full payment of Claims in Classes 1 through 6, holders of Interests shall be paid a Pro Rata Share of available Distributable Cash on a date to be determined by the Plan Administrator.

# ARTICLE V.
# ACCEPTANCE OR REJECTION OF THE PLAN

5.01.   Classes Entitled to Vote. Creditors and Interest holders in Classes 3 through 7 are entitled to vote and shall vote separately to accept or reject the Plan. Any Unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any Unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.02.   Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan. A Class of Interests shall have accepted the Plan if it is accepted by holders of such Interests that hold at least two-thirds (2/3) in amount of the allowed Interests of such Class that have voted on the Plan.

5.03.   Cramdown. This section shall constitute the request by the Debtors, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

# ARTICLE VI.
# MEANS FOR IMPLEMENTATION OF THE PLAN

6.01.   Funds Available for Distribution. The Distributable CashThe sources of funds for making Distributions will consist of remaining sales proceeds as well as recoveries from the pursuit of Estate Claims. For that reason, the amount of Distributable Cashfunds that will ultimately be available for distribution to creditors is unknown at this time as it will depend on the outcome of the pursuit of the Estate Claims.

6.02.   Continued Existence of the Debtors. The Debtors shall continue to exist after the Effective Date, with all the powers available to such legal entities, in accordance with applicable law and pursuant to their constituent documents.  Upon the occurrence of the Effective Date, the Debtors shall be thereafter referred to as the Liquidating Debtors.

6.03.   Vesting of Assets. As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets, including all Cash, Estate Accounts Receivable, Estate Claims and Estate Defenses, shall vest in the Liquidating Debtors, free and clear of all rights, title, interests, claims, liens, encumbrances, and charges, except as expressly set

forth in the Plan. On and after the Effective Date, the Liquidating Debtors may administer, use, acquire, or dispose of such Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Liquidating Debtors may pay the charges that they incur on or after the Effective Date for all fees, disbursements, expenses, or related support services of professionals without application to, or approval of, the Bankruptcy Court.

6.04.  <u>Assumption of Obligations to Make Distributions</u>. The Liquidating Debtors shall be deemed to have assumed the obligations to make all Distributions pursuant to this Plan.

6.05.  <u>Actions by Debtors and the Liquidating Debtors to Implement Plan</u>. The entry of the Confirmation Order shall constitute all necessary authorization for the Debtors and the Liquidating Debtors to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, (a) all transfers of Assets, including to the Liquidating Debtors, that are to occur pursuant to the Plan; (b) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (c) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

6.06.  <u>Management of the Liquidating Debtors</u>

(a)  On the Effective Date, automatically and without further action, any and all remaining officers, directors, or managers of the Debtors shall be deemed to have resigned or withdrawn.

(b)  On and after the Effective Date, the Plan will be administered by the Plan Administrator on behalf of the Liquidating Debtors, and all actions taken thereunder in the name of the Liquidating Debtors shall be taken through the Plan Administrator.

(c)  The Plan Administrator shall be ~~designated no later than _____, 2022.~~Michael F. Burkart.  The Plan Administrator shall be deemed appointed ~~upon entry~~as of the Effective Date pursuant to the Confirmation Order without further motion, application, notice, hearing, or other order of the Bankruptcy ~~Code~~Court.

(d)  On and after the Effective Date, the Plan and the Post-Confirmation Estate including all Assets of the Liquidating Debtors shall be administered and managed under the direction of the Plan Administrator as provided by the terms of the Plan.  The Plan Administrator shall be responsible for the implementation of the Plan, including with respect to the management, control, and operation of the Liquidating Debtors and the Post-Confirmation Estate. The Plan Administrator shall have all powers and duties as are necessary to implement the Plan and shall act as the sole officer, director, and responsible

person of the Liquidating Debtors. In the performance of his duties hereunder, the Plan Administrator shall have the rights and powers of a debtor-in-possession under section 1107 of the Bankruptcy Code, and such other rights, powers, and duties incident to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary, including, without limitation, the authority to file the Liquidating Debtors' tax returns, and issue final tax documents, including K-1s, as appropriate under applicable nonbankruptcy law evidencing the foregoing. Notwithstanding the foregoing, all Liquidating Debtor tax returns filed by the Plan Administrator shall either reflect (i) the election out of the Centralized Partnership Audit Regime under Section 6221(b), consistent with past practice and/or (ii) the designation of Paul Deluca as the Partnership Representative. In addition, as the taxpayers on the returns, Paul Deluca and Steve Capper shall retain authority to make decisions regarding responding to and challenging any potential or actual enforcement actions by the taxing authorities.

(e)    From and after the Effective Date, the Plan Administrator may, among other things, use, pledge, acquire, and/or dispose of any Assets of the Liquidating Debtors' Post-Confirmation Estate free of the restrictions imposed under the Bankruptcy Code and without prior Bankruptcy Code approval, provided that it is in conformance with this Plan and that the Bankruptcy Court retains jurisdiction over the Plan Administrator and this Plan.

(f)    The Confirmation Order shall provide the Plan Administrator with express authority to convey, transfer, and assign any and all property of the Liquidating Debtors' Post-Confirmation Estate consistent with the terms of this Plan and to take all actions necessary to effectuate same.

(g)    The Plan Administrator, acting on behalf of Liquidating Debtors, shall have sole responsibility for making Distributions under the Plan and pursuing the Estate Claims (including the Avoidance Actions), and the collection and pursuit of the Estate Accounts Receivables on behalf of the Liquidating Debtors and the Post-Confirmation Estate.

(h)    Notwithstanding anything to the contrary in the Plan, the powers and authority of the Plan Administrator hereunder shall be subject to the powers and authority of the Oversight Committee as set forth in section 6.14 of the Plan.

6.07.   <u>Payment of Fees and Expenses to Plan Administrator and Professionals</u>. The Plan Administrator may employ on behalf of himself, the Liquidating Debtors, and the Post-Confirmation Estate professional persons, as such term is used in the Bankruptcy Code, to assist the Plan Administrator to carry out the duties under this Plan.  These professionals may be hired without the requirement that such professionals file employment applications for Bankruptcy Court approval of their employment, whether on an hourly, contingency fee or other basis, and shall be compensated without requirement that such professionals file interim or final applications for payment of post Effective Date fees, whether on an hourly, contingency fee or other basis. The Plan Administrator and his professionals shall be entitled to reimbursement of their reasonable and necessary expenses incurred in carrying out his duties under the Plan before any Distributions are required to be made on account of

any Allowed Claims.  The Plan Administrator shall be compensated at his standard hourly rate for time spent administering the implementation of the Plan and the resolution of objections to Claims, if any are asserted, without further motion or application to the Bankruptcy Court.

6.08.   Resignation, Replacement, or Termination of Plan Administrator.  From and after the Effective Date the Plan Administrator or his successor shall continue to serve in his capacity as the sole officer, director, and responsible person of the Liquidating Debtors through the earlier of (a) the date the Liquidating Debtors are dissolved in accordance with the Plan; and (b) the date the Plan Administrator resigns or is replaced or terminated.  In the event that the Plan Administrator resigns or is unable to serve, a successor shall be appointed by the Oversight Committee as set forth in subsection 6.14(k) of the Plan; *provided, however*, that holders of Allowed Claims retain the right to challenge the successor Plan Administrator in the Bankruptcy Court.

6.09.   Post-Effective Date Service List. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties that have filed a Notice of Appearance in the Chapter 11 Cases, and (d) the Liquidating Debtors.

6.10.   Section 505 Powers. All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Liquidating Debtors as of the Effective Date.

6.11.   Section 510(c) Powers. All rights and powers to seek or exercise any right or remedy of equitable subordination are hereby reserved to the Estate and shall be transferred to, and vested in, the Liquidating Debtors as of the Effective Date as an Estate Defense.

6.12.   Section 506(c) Powers. The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Liquidating Debtors.

6.13.   Dissolution of the Liquidating Debtors.  Unless otherwise set forth in this Plan, upon the liquidation of all assets of the Liquidating Debtors pursuant to the Plan, the payment of all amounts due to be paid by the Debtors or Liquidating Debtors under the Plan, and the filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court, the Liquidating Debtors shall be deemed dissolved for all purposes without the necessity for any further actions to be taken by or on behalf of the Liquidating Debtors or payments to be made in connection therewith; *provided, however*, that the Plan Administrator shall file with the appropriate state authority a certificate of cancellation. From and after the Effective Date, the Liquidating Debtors shall not be required to file any document, or take any other action, to withdraw ~~its~~their business operation from any state in which the Liquidating Debtors were previously conducting ~~its~~their business operations.

6.14.   Oversight Committee

(a)    Establishment. On the Effective Date, a committee comprised of five
(5) members (the "Members") shall be formed and shall be referred to as the "Oversight
Committee."  The Oversight Committee shall perform an advisory role in the administration
of this Plan and the Liquidating Debtors.  The initial Members of the Oversight Committee
will be comprised of Paul Deluca, Steve Capper, or their representatives, representatives of
the two Subordinate Secured Claim holders if they choose to appoint such member(s), and
one  unsecured creditor, if  willing to serve, as selected by interested unsecured creditors.
Once the Claim of a Subordinate Secured Claim holder is paid in full, it shall no longer serve
as a Member of the Oversight Committee. Members of the Oversight Committee shall serve
without compensation but shall be entitled to reimbursement of reasonable expenses upon
the terms and conditions set forth in subsection 6.14(j) of the Plan.

(b)    Role of Oversight Committee.  The Oversight Committee shall
monitor, and the Plan Administrator shall consult with the Oversight Committee in
connection with, the administration of the Assets of the Liquidating Debtors by the Plan
Administrator.  The Oversight Committee may provide advice or recommendations with
respect to any action to be taken by the Plan Administrator in connection with, including,
without limitation: (a) the arrangement of any sale, transfer or other disposition of Assets of
the Liquidating Debtors; (b) the investment of any proceeds of Assets; (c) the conduct and
settlement of litigation with respect to any Contested Claims and any Estate Claims (other
than with respect to a De Minimis Claim); and (d) the making of any Distributions in respect
of Allowed Claims.  All decisions of the Oversight Committee, and all actions, directives,
approvals, and consents of the Oversight Committee required or contemplated hereunder,
shall be effective upon a majority vote of the Members thereof, except that until the Claims
of the Subordinate Secured Claim holders are paid in full, the votes of Mr. Capper, Mr.
Deluca or their representatives, shall not count. Once the Claims of the Subordinate
Secured Claim holders are paid in full, the votes of Mr. Capper, Mr. Deluca or their
representatives shall count towards calculating the required majority vote. The votes of the
Subordinate Secured Claim holders shall be weighted based upon the amount of the unpaid
Class 3 and Class 4 Claim of each. In taking or failing to take any action hereunder, the Plan
Administrator may rely upon a written statement (including signatures by counterpart
facsimile or approval by electronic transmission) by such majority of the Oversight
Committee. Neither the Oversight Committee nor its Members shall exercise any control or
authority over Liquidating Debtors or the Assets that is inconsistent with the purposes or
provisions of this Plan or the Confirmation Order.  To any extent a Member of the Oversight
Committee has a conflict of interest with respect to any matter being handled by the Plan
Administrator, such Member of the Oversight Committee shall recuse themselves and be
recused from any such discussions.

(c)    Joint Interest. Privileged communications may be shared among the
Plan Administrator and the Oversight Committee (and their respective professionals) without
compromising the privileged nature of the communications in accordance with the "joint
interest" doctrine. For the avoidance of doubt, this subsection 6.14(c) of the Plan shall
constitute an acknowledgment that the Plan Administrator and the Oversight Committee
(and each of its Members individually) share a "joint interest" with respect to, among other
things, the Plan, the Estate Claims, and the Assets.

(d)      <u>Removal of Member</u>.

(i)      <u>Removal for Disability</u>.  Subject to Bankruptcy court approval, a Member of the Oversight Committee may be removed by a unanimous vote of all other Members upon a finding that such Member is unable to perform his or her duties due to illness or other physical or mental disability.

(ii)      <u>Removal for Cause</u>. Subject to Bankruptcy Court approval, a Member of the Oversight Committee may be removed for cause by a unanimous vote of all other Members of the Oversight Committee. "Cause" shall include, without limitation: (a) fraud or willful misconduct in connection with the affairs of the Liquidating Debtors and Assets; or (b) breach of fiduciary duty.

(e)      <u>Replacement of Member</u>.  If any Member of the Oversight Committee resigns or is removed as an Oversight Committee Member, such Member may be replaced by a unanimous vote of the remaining members of the Oversight Committee. If any position on the Oversight Committee remains vacant for more than thirty (30) days, such vacancy may be filled within fifteen (15) days thereafter by the designation of the Plan Administrator without the requirement of a vote by the other members of the Oversight Committee. The Oversight Committee will continue to fully function even while a position on the Oversight Committee remains vacant, with the Plan Administrator breaking any ties.

(f)      <u>Meeting of Plan Administrator and the Oversight Committee</u>. Meetings of the Oversight Committee and the Plan Administrator are to be held with such frequency and at such place as the Oversight Committee may determine in its sole discretion.

(g)      <u>Oversight Committee Action without Meeting</u>.  Any action required or permitted to be taken by the Oversight Committee may be taken without a meeting if the action is taken by unanimous written consent of the Oversight Committee as evidenced by one or more written consents describing the action taken, signed by all Members of the Oversight Committee and recorded in the minutes or other transcript of proceedings of the Oversight Committee and the Plan Administrator.

(h)      <u>Dispute Resolution</u>.  In the event of a dispute between the Plan Administrator and the Oversight Committee, or between Members of the Oversight Committee, as to the proper course of action with respect to the decisions of the Oversight Committee consistent with its role under subsection 6.14(b) above or involving an allegation that either party has failed to act in a manner consistent with the Plan or the Confirmation Order, the parties shall meet and confer and attempt to reach a consensual resolution of the dispute. Should a consensual resolution not be reached, the Plan Administrator or the Oversight Committee or any of its Members may seek appropriate relief from the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to resolve such disputes.

(i)      <u>Confidentiality of Information and Conflicts of Interest</u>.  The Plan Administrator shall have authority to exclude any Oversight Committee Member from any deliberations, or withhold any information from any Oversight Committee Member, regarding

matters affecting the Liquidating Debtors or the Assets in which such excluded Member is encumbered by a conflict of interest that has been disclosed or otherwise becomes known to the Plan Administrator. Any Oversight Committee Member that is excluded from deliberations or denied access to information under this subsection 6.14(i) may challenge the Plan Administrator's determination in accordance with the dispute resolution procedure set forth in subsection 6.14(h) above.

(j)     Oversight Committee Expenses. Each Member of the Oversight Committee shall be entitled to reimbursement of such Member's reasonable and necessary expenses incurred while carrying out his or her duties as a member of the Oversight Committee. The reimbursement of expenses of the Oversight Committee Members shall be paid out of applicable Assets. On or before the last date of each month following the month for which reimbursement is sought, each member of the Oversight Committee shall deliver to the Plan Administrator, its counsel, and the other Members of the Oversight Committee a monthly statement of expenses incurred in carrying out such Member's duties. The Plan Administrator, its counsel, and the other Members of the Oversight Committee will have fifteen (15) days from the date such statement is received to review the statement and object to such statement by serving a written objection on the member of the Oversight Committee making the request, which objection shall set forth the precise nature of the objection and the amount at issue. At the expiration of the fifteen (15) day period, the Plan Administrator shall promptly pay out of the Assets, to the extent available, and, in the Plan Administrator's discretion, to the extent that sufficient assets remain to administer the Plan, 100% of the amounts requested, except for the portion of such fees and disbursements to which an objection has been made. The parties shall attempt to consensually resolve objections, if any, to any monthly statement. If the parties are unable to reach a consensual resolution of any such objection, the party that received an objection to its expenses may seek payment of such expenses by filing a motion with the Bankruptcy Court on proper notice to the Plan Administrator and its counsel.

(k)     Appointment of Successor Plan Administrator.  In the event of the death (in the case of a Plan Administrator that is a natural person), dissolution (in the case of a Plan Administrator that is not a natural person), resignation, incompetency or removal of the Plan Administrator, the members of the Oversight Committee shall, by majority vote, designate a successor Plan Administrator. Such appointment shall specify the date when such appointment shall be effective. Every successor Plan Administrator appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring Plan Administrator an instrument accepting the appointment and agreeing to be bound by the terms of the Plan, and shall additionally file with the Bankruptcy Court an affidavit demonstrating that such Person is a "disinterested person," as defined by section 101(14) of the Bankruptcy Code, and thereupon the successor Plan Administrator, without any further act, deed, or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Plan Administrator.

(l)     Standard of Care; Indemnification; Exculpation. Neither the Oversight Committee nor any of its Members, or any duly designated agent or representatives of any such party shall be liable for the act, default, or misconduct of any other Member of the

Oversight Committee, nor shall any Member be liable for anything other than such Member's own gross negligence or willful misconduct as determined by Final Order of a court of competent jurisdiction. The Oversight Committee and its Members shall be defended, held harmless, and indemnified from time to time from the Assets against any and all losses, claims, costs, expenses and liabilities to which the Oversight Committee or its Members may be subject by reason of the Oversight Committee's or its Members' execution of their duties under the Plan; *provided, however,* that the Oversight Committee or any Member shall not be entitled to indemnification if and to the extent the Oversight Committee or the particular Member is found by a Final Order of a court of competent jurisdiction to have committed willful misconduct or gross negligence. If the Oversight Committee or its Members become involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, the Plan Administrator shall periodically advance or otherwise reimburse on demand the Oversight Committee or its Members reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, expert fees, disbursements, and related expenses) incurred in connection therewith, but the Oversight Committee or its Members shall be required to repay promptly to the Plan Administrator the amount of any such advanced or reimbursed expenses paid to the Oversight Committee or its Members if and to the extent that it is determined by Final Order of a court of competent jurisdiction that the Oversight Committee or a particular Member engaged in willful misconduct or gross negligence in connection with the administration of the Plan with respect to the specific matters as to which such expenses were incurred. The Oversight Committee and its Members, agents, or representatives, if any, shall be likewise defended, held harmless and indemnified in the same manner and to the same extent. The Oversight Committee and its Members may, in connection with the performance of their duties, and in their sole and absolute discretion, consult with the Plan Administrator's counsel and any other professional advisors directly retained by the Oversight Committee or counsel to a Member of the Oversight Committee, and the Oversight Committee or Members thereof shall not be liable for anything done or omitted or suffered to be done in accordance with the advice or opinions of such professionals. If the Oversight Committee or any Member determines not to consult with counsel, accountants, or other professionals, it shall not be deemed to impose any liability on the Oversight Committee or its Members and/or agents or representatives.

(m)     Reliance by Oversight Committee. The Oversight Committee may rely, and shall be fully protected personally in acting upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Oversight Committee have no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.

(n)     Dissolution of Oversight Committee. Upon the certification by the Plan Administrator that all Contested Claims have been disposed of and all Assets have been distributed, abandoned, or otherwise disposed of, the Members of the Oversight Committee shall resign their positions, whereupon they shall be discharged from further duties and

responsibilities and the Oversight Committee shall be dissolved.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

7.01.    <u>Source of Distributions</u>. All Distributions required to be made by the Liquidating Debtors under this Plan shall be made by the Liquidating Debtors in the manner provided in this Plan and the Confirmation Order.

7.02.    <u>Plan Distribution Date</u>. ~~All Distributions shall be made on a~~ The Plan Distribution Date. ~~The initial Plan Distribution Date shall occur, (a) with respect for~~ each ~~Claim that is an Allowed Claim on~~applicable Class of Claims will be determined by the ~~Effective Date,~~ Liquidating Debtors, and shall be a date that is ~~as soon as reasonably practicable after~~ in compliance with the ~~Effective Date; and (b)~~priority of payment and availability of funds as set forth under Article III and Article IV hereof with respect to each ~~claim that is not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date that~~ such ~~Claim is Allowed.~~Class of Claims.   The Liquidating Debtors may, in their discretion, schedule one or more ~~subsequent~~ Plan Distribution Dates consistent with the obligation to liquidate and distribute the Assets and their proceeds to holders of Allowed Claims in accordance with the terms of the Plan in a reasonably expeditious and efficient manner.

7.03.    <u>Timing and Amount of Distributions</u>. No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court. No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Liquidating Debtors shall, in the exercise of their good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible. The Liquidating Debtors may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions. ~~Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or otherwise distributed in accordance with the orders of the Bankruptcy Court.~~

7.04.    <u>Means of Cash Payment</u>. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

7.05.    <u>Record Date for Distributions</u>. As of the close of business on the Effective Date (the "<u>Distribution Record Date</u>"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims. Although there is no prohibition against the transfer of any Claim by any Creditor, the Liquidating Debtors shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Liquidating Debtors shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all

Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Liquidating Debtors may, in the exercise of their good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

7.06.   <u>Delivery of Distributions</u>. All Distributions, deliveries, and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Cases by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Liquidating Debtors are notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim. However, all notices to the Liquidating Debtors reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Liquidating Debtors may fix in the exercise of their sole discretion. After such date, all Unclaimed Property shall revert to the Liquidating Debtors and the Claim of any holder with respect to such property shall be discharged and forever barred.

7.07.   <u>W-9 Forms</u>. Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit (collectively the "<u>W-9 Form</u>") to the Liquidating Debtors prior to receiving any Distribution from the Liquidating Debtors. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Liquidating Debtors within thirty (30) days of the Effective Date, the Liquidating Debtors shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Liquidating Debtors. The request shall be in writing and shall be delivered to the last address known to the Debtors, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Liquidating Debtors within thirty (30) days shall result in a waiver of any right or rights to a Distribution. In the event any holder of an Allowed Claim fails to provide the Liquidating Debtors with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution.

7.08.   <u>Time Bar to Cash Payments</u>. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the issuer of the check by the holder of the Allowed Claim with respect to which such check originally was issued. Any request for reissuance in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Liquidating Debtors may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

7.09.    <u>Cure Period</u>. Except as otherwise set forth herein, the failure by the Liquidating Debtors to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Liquidating Debtors have been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Liquidating Debtors shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

7.10.    <u>Distributions after Substantial Consummation</u>. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8007.

## ARTICLE VIII.
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES

8.01.    <u>Retention of Estate Claims</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Liquidating Debtors, both for purposes of seeking an affirmative recovery against any Person and for the purposes of offset, recoupment or defense against any Claim asserted against the Estate or the Liquidating Debtors.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Liquidating Debtors hereby specifically reserve, retain, and preserve the Estate Claims reflected in the attached **Exhibit A** hereto. Reference is here made to **Exhibit A** hereto, which constitutes an integral part of this Plan. The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which the Debtors are presently aware and shall not act as a limitation on the potential Estate Claims that may exist. It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other Estate Claims, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws, shall all be reserved, retained, and preserved under this Plan to be transferred to, and vested in, the Liquidating Debtors. All Estate Claims are reserved, retained, and preserved both as causes of action for an affirmative recovery and as counterclaims and for the purposes of offset or recoupment against any Claims asserted against the Estate.

8.02.    <u>Retention of Estate Defenses</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall

be transferred to, and vested in, the Liquidating Debtors. For this purpose, all Estate Defenses are hereby reserved, retained, and preserved by the Debtors and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, as of the Effective Date based on the entry of the Confirmation Order.

8.03.    Assertion of Estate Claims and Estate Defenses. The Liquidating Debtors shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the creditors of the Estate of the Liquidating Debtors.

### ARTICLE IX.
### PROCEDURES FOR RESOLVING AND TREATING
### CONTESTED AND CONTINGENT CLAIMS

9.01.    Claims Listed in Schedules as Disputed. Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent, or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Liquidating Debtors or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

9.02.    Responsibility for Objecting to Claims and Settlement of Claims. Subject to the powers and authority of the Oversight Committee as set forth in section 6.14 of this Plan, the Liquidating Debtors through the Plan Administrator shall have exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

(a)    From and after the Effective Date, the Liquidating Debtors through the Plan Administrator have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim. Any Contested Claim may be litigated to Final Order by the Liquidating Debtors; and

(b)    From and after the Effective Date, the Liquidating Debtors through the Plan Administrator shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

9.03.    Objection Deadline. All Objections to Claims shall be served and filed by the Objection Deadline; *provided, however*, that the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. The Liquidating Debtors may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim. Any such motion may be granted without notice or a hearing. In the event that the Liquidating Debtors filesfile such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such

motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Liquidating Debtors. Nothing contained herein shall limit the right of the Liquidating Debtors to object to Claims, if any, filed or amended after the Objection Deadline.

9.04.    Response to Claim Objection. If the Liquidating Debtors file an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing. The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Liquidating Debtors shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

9.05.    Distributions on Account of Contested Claims. If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

9.06.    No Waiver of Right to Object. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release, or impair the Liquidating Debtors' right to object to any Claim.

9.07.    Offsets and Defenses. The Liquidating Debtors shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Liquidating Debtors against any Claim asserted against the Estate or Liquidating Debtors shall constitute "core" proceedings.

9.08.    Claims Paid or Reduced Prior to Effective Date. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Debtors or the Liquidating Debtors from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE X.
## EXECUTORY CONTRACTS

10.01.  <u>Assumption and Rejection of Executory Contracts</u>. All Executory Contracts shall be deemed rejected by the Debtors upon the Effective Date unless an Executory Contract (a) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court or (b) is the subject of a motion to assume filed on or before the Confirmation Date. The Plan shall constitute a motion to reject all Executory Contracts except as stated in this paragraph. However, the Debtors may file a separate motion for the assumption or rejection of any Executory Contract at any time through the Confirmation Date.

10.02.  <u>Bar to Rejection Claims</u>. Except as otherwise ordered by the Bankruptcy Court, including any prior Order of the Bankruptcy Court approving the rejection of an Executory Contract, any Rejection Claim based on the rejection of an Executory Contract shall be forever barred and shall not be enforceable against the Liquidating Debtors or the Liquidating Debtors' assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Liquidating Debtors and its counsel by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract.

10.03.  <u>Rejection Claims</u>. Any Rejection Claim not barred by section 10.02 of the Plan shall be classified as a Class 6 General Unsecured Claim subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; *provided, however*, that any Rejection Claim by a lessor based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed an admission by the Debtors or the Liquidating Debtors that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Liquidating Debtors of any objections or defenses to any such Rejection Claim if asserted.

10.04.  <u>Reservation of Rights</u>. Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or that the Debtors or the Liquidating Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## ARTICLE XI.
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

11.01.  Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors for the sole purposes of implementing the Plan, including for purposes of voting and Distributions to be made under the Plan. Pursuant to

such order: (a) all assets and liabilities of the Debtors will be deemed merged; (b) all guarantees by one Debtor of the obligations of the other Debtor will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by the other Debtor and any joint or several liability of the Debtors will be deemed to be one obligation of the consolidated Debtors; and (c) each and every Claim filed or to be filed in the Chapter 11 Cases of either Debtor will be deemed filed against the consolidated Debtors and will be deemed one Claim against and a single obligation of the consolidated Debtors; and (d) all intercompany claims will be eliminated.

## ARTICLE XII.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

12.01. Conditions to Effectiveness of Plan. The Plan shall become effective on the Effective Date. The Plan shall not become effective until the following conditions have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors; (b) the necessary Plan Documents have been filed or executed; (c) the designated Plan Administrator has agreed to serve in such role and has executed and filed with the Bankruptcy Court an affidavit accepting the appointment and agreeing to be bound by the terms of the Plan, and certifying that such Person is a "disinterested person," as defined by section 101(14) of the Bankruptcy Code.

12.02. Notice of the Effective Date. On or as soon as reasonably practical after the occurrence of the Effective Date, the Liquidating Debtors shall cause a notice of the Effective Date to be filed with the Bankruptcy Court and served on all Creditors and parties-in-interest.

12.03. Revocation of Plan. The Debtors may revoke and withdraw the Plan at any time before the Effective Date. If the Debtors revoke or withdraw the Plan, or if confirmation of the Plan does not occur, then this Plan shall be deemed null and void and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

## ARTICLE XIII.
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

13.01. Compromise and Settlement

(a)     Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtors or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business

or affairs of, or transactions with, the Debtors or the Estate. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtors, the Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtors, the Estate, and the Assets. Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtors and their affiliates, successors, assigns, the Liquidating Debtors or the Liquidating Debtors' Assets, or the Estate, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

(b)     It is not the intent of this Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control, and such Prior Settlement shall be enforceable according to its terms.

13.02.  Discharge.  This Plan does not provide for any discharge pursuant to section 1141(d)(3) of the Bankruptcy Code.  However, the Plan Injunction shall apply to all holders of Claims and Interests arising or accruing prior to the Effective Date.

13.03.  PLAN INJUNCTION.  THIS SECTION IS REFERRED TO HEREIN AS THE "PLAN INJUNCTION." EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, AS OF THE EFFECTIVE DATE ALL HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE ESTATE, OR ANY OF THE ASSETS THAT AROSE PRIOR TO THE EFFECTIVE DATE ARE HEREBY PERMANENTLY ENJOINED AND PROHIBITED FROM THE FOLLOWING: (i) THE COMMENCING OR CONTINUATION IN ANY MANNER, DIRECTLY OR INDIRECTLY, OF ANY ACTION, CASE, LAWSUIT, OR OTHER PROCEEDING OF ANY TYPE OR NATURE AGAINST THE DEBTORS, LIQUIDATING DEBTORS, THE ESTATE, THE ASSETS, OR THE POST-CONFIRMATION ESTATE, WITH RESPECT TO ANY SUCH CLAIM OR INTEREST ARISING OR ACCRUING BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION THE ENTRY OR ENFORCEMENT OF ANY JUDGMENT, OR ANY OTHER ACT FOR THE COLLECTION, EITHER DIRECTLY OR INDIRECTLY, OF ANY CLAIM OR INTEREST AGAINST THE ESTATE, THE DEBTORS, THE ASSETS, THE LIQUIDATING DEBTORS, OR THE POST-CONFIRMATION ESTATE; (ii) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST, ENCUMBRANCE, RIGHT OR BURDEN, EITHER DIRECTLY OR INDIRECTLY, AGAINST THE ESTATE, THE DEBTORS, THE ASSETS, THE LIQUIDATING DEBTORS, OR THE POST-CONFIRMATION ESTATE, OR (iii)

TAKING ANY ACTION IN RELATION TO THE DEBTORS, ESTATE, THE LIQUIDATING DEBTORS, ASSETS, OR THE POST-CONFIRMATION ESTATE, EITHER DIRECTLY OR INDIRECTLY, WHICH VIOLATES OR DOES NOT CONFORM OR COMPLY WITH THE PROVISIONS OF THIS PLAN APPLICABLE TO SUCH CLAIM OR INTEREST. THE PLAN INJUNCTION SHALL ALSO BE INCORPORATED INTO THE CONFIRMATION ORDER.

13.04.   Setoffs. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Liquidating Debtors may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtors may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, right, or Estate Claim of the Debtors without the consent of the Debtors or the Liquidating Debtors unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

13.05.   Recoupment. Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtors or the Liquidating Debtors unless (a) such holder actually provides notice thereof in writing to the Debtors or the Liquidating Debtors of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtors or the Liquidating Debtors have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtors or the Liquidating Debtors consents to the requested recoupment. The Debtors and the Liquidating Debtors shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtors or the Liquidating Debtors consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

13.06.   Turnover. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Liquidating Debtors.

13.07.   Automatic Stay. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in

effect until the Effective Date of the Plan as to the Debtors, the Estate and all Assets.

## ARTICLE XIV.
## JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN

14.01.  <u>Retention of Jurisdiction</u>. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)  To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)  To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code;

(c)  To hear and determine any disputes over payment of fees or expenses authorized to be paid or reimbursed under this Plan;

(d)  To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(e)  To hear and determine any and all adversary proceedings, applications, or contested matters, including but not limited to the allowance of any Claim;

(f)  To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset or recoupment; and (iv) determinations of Objections to Contested Claims;

(g)  To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(h)  To administer Distributions to holders of Allowed Claims as provided herein;

(i)  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or

vacated;

(j)     To enable the Liquidating Debtors to prosecute any and all proceedings which may be brought to set aside transfers, Liens or encumbrances and to recover any transfers, Assets, properties or damages to which the Liquidating Debtors may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Liquidating Debtors and any other party, including but not limited to, any causes of action or Objections to Claims, preferences or fraudulent transfers and obligations or equitable subordination;

(k)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(l)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan and the transactions required or contemplated pursuant thereto;

(m)     To hear and determine any motion or application which the Liquidating Debtors is required or allowed to commence before the Bankruptcy Court pursuant to this Plan;

(n)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(o)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(p)     To enter a final decree closing the Chapter 11 Cases; and

(q)     To determine any other matter or dispute relating to the Estate, the Estate Claims, the Estate Defenses, the Assets, or the Distributions by the Liquidating Debtors.

14.02.  <u>Abstention and Other Courts</u>. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

14.03.  <u>Non-Material Modifications</u>. The Liquidating Debtors may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable. The Liquidating Debtors may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of

the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

14.04.   Material Modifications. Modifications of this Plan may be proposed in writing by the Debtors at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS

15.01.   Severability. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Liquidating Debtors may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the re-solicitation of any acceptance or rejection of the Plan.

15.02.   Oral Agreements; Modification of Plan; Oral Representations or Inducements. The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. None of the Debtors, any representative of the Estate, nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

15.03.   Waiver. The Liquidating Debtors shall not be deemed to have waived any right, power, or privilege pursuant to the Plan unless the waiver is in writing and signed by the Liquidating Debtors. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Liquidating Debtors, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

15.04.   Notice. Any notice or communication required or permitted by the Plan shall be given, made or sent as follows:

(a)      If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)      If to the Liquidating Debtors, notice shall be sent to the following ~~addresses~~address:

> ~~Jeff P. Prostok~~
> ~~Lynda L. Lankford~~
> ~~Dylan T.F. Ross~~
> ~~Forshey Prostok LLP~~
> ~~777 Main Street, Suite 1550~~
> ~~Fort Worth, Texas 76102~~
> ~~jprostok@forsheyprostok.com~~
> ~~llankford@forsheyprostok.com~~
> ~~dross@forsheyprostok.com~~
> Flexible Funding Ltd. Liability Co.
> Instapay Flexible, LLC
> Plan Administrator
> Michael F. Burkart
> 5150 Fair Oaks Blvd., #101-185
> Carmichael, CA 95608
> E-mail: burkart@cwo.com

(c)      Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Liquidating Debtors of its new address in accordance with the terms of this section.

(d)      Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

15.05.  Compliance with All Applicable Laws. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Liquidating Debtors shall comply with such law, rule, regulation, or order; *provided, however,* that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate Reserve has been set aside on the books of the Liquidating Debtors.

15.06.  Duties to Creditors; Exculpation. Neither the Debtors nor any agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtors, including but not limited to Estate Professionals (collectively, the "Exculpated Parties"), shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtors' bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following:  (a) the Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of

the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date. All such Exculpated Parties shall be fully exculpated and released from any and all claims and causes of action by any Person, known or unknown, in connection with, or arising out of, or relating to, any of the following:  (x) the Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Estate, (y) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (z) any act or omission relating to the administration of the Plan after the Effective Date, except for claims and causes of action arising out of such Exculpated Party's gross negligence or willful misconduct.

15.07.  Binding Effect. The Plan shall be binding upon, and shall inure to the benefit of, the Liquidating Debtors, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

15.08.  Governing Law, Interpretation. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

15.09.  Payment of Statutory Fees. All accrued U.S. Trustee Fees as of the Confirmation Date shall be paid by the Liquidating Debtors on or as soon as practicable after the Effective Date, and thereafter shall be paid by the Liquidating Debtors as such statutory fees become due and payable.

15.10.  Filing of Additional Documents. On or before Substantial Consummation of the Plan, the Liquidating Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.11.  Computation of Time. Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan. If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

15.12.  Elections by the Liquidating Debtors. Any right of election or choice granted to the Liquidating Debtors under this Plan may be exercised, at the Liquidating Debtors' election, separately as to each Claim, Creditor or Person.

15.13.  Release of Liens. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in the Liquidating Debtors shall be deemed to be released, terminated, and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

15.14.  <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

15.15.  <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Liquidating Debtors shall comply with all withholding and reporting requirements imposed by federal, state, and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

15.16.  <u>Notice of Occurrence of the Effective Date</u>. Promptly after occurrence of the Effective Date, the Liquidating Debtors, as directed by the Bankruptcy Court, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of the occurrence of the Effective Date.

15.17.  Notice of Entry of Confirmation Order. Promptly after entry of the Confirmation Order, the Liquidating Debtors, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

*[Remainder of page intentionally left blank.]*

Dated:    ~~April 18,~~May____, 2022.                Respectfully submitted,

**FLEXIBLE FUNDING LTD. LIABILITY CO.**


By: _____
    Steve Capper
    Managing Member


By: _____
    Paul DeLuca
    Managing Member


**INSTAPAY FLEXIBLE, LLC**


By: _____
    Steve Capper
    Manager


By: _____
    Paul DeLuca
    Manager

APPROVED:

Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
Dylan T.F. Ross
State Bar No. 24104435
**FORSHEY PROSTOK LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
llankford@forsheyprostok.com
dross@forsheyprostok.com

**ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION**

L:\JPROSTOK\Flexible Funding (C11) #6264\Plan & DS\Amended DS & Plan\Amended Plan dated 5.17.2022.docxx

# EXHIBIT A

## PRESERVATION OF ESTATE CLAIMS, ESTATE DEFENSES

**Pending litigation, asserted, assertable, and potential claims:**

1.   The claims, causes of action, defenses, and affirmative defenses of Flexible Funding Ltd. Liability Co. asserted or assertable against Marquez Brothers Southwest, Inc., including those asserted in ***Flexible Funding Ltd. Liability Co. v. Marquez Brothers Southwest, Inc.***, pending under Adversary Proceeding No. 21-04085 in the United States Bankruptcy Court for the Northern District of Texas.

2.   The claims, causes of action, defenses, and affirmative defenses of Flexible Funding Ltd. Liability Co. asserted or assertable against Marquez Brothers Nevada, Inc. including those asserted in ***Flexible Funding Ltd. Liability Co. v. Marquez Brothers Nevada, Inc.***, pending under Adversary Proceeding No. 21-4001 in the United States Bankruptcy Court for the Northern District of Texas.

3.   The claims, causes of action, defenses, and affirmative defenses of Flexible Funding Ltd. Liability Co. asserted or assertable against El Gallo Bakery, including those in ***Flexible Funding v. El Gallo Bakery***, pending under Cause No. CGC-19-578772 in the San Francisco Superior Court.

4.   The claims, causes of action, defenses, and affirmative defenses of Flexible Funding Ltd. Liability Co. asserted or assertable against El Gall Grillo, including those in ***Flexible Funding v. El Gallo Grill***, pending under Cause No. CGC-19-576659 in the San Francisco Superior Court.

5.   The claims, causes of action, defenses, and affirmative defenses of Flexible Funding Ltd. Liability Co. asserted or assertable against Fresh Packing, including those in ***Flexible Funding v. Fresh Packing***, pending under Cause No. A161972.

6.   The claims, causes of action, defenses, and affirmative defenses of Flexible Funding Ltd. Liability Co. asserted or assertable against Marquez Brothers Foods, including those in ***Flexible Funding v. Marquez Brothers Foods***, pending under Cause No. CGC-19-578880 in the San Francisco Superior Court.

7.   The claims, causes of action, defenses, and affirmative defenses of Flexible Funding Ltd. Liability Co. asserted or assertable against Marquez Brothers Enterprises, including those in ***Flexible Funding v. Marquez Brothers Enterprises***, pending under Cause No. CGC-19-578776 in the San Francisco Superior Court.

8.   The claims, causes of action, defenses, and affirmative defenses of Flexible Funding Ltd. Liability Co. asserted or assertable against Que Moles, including

those in ***Flexible Funding v. Que Moles***, pending under Cause No. CGC-19-576217 in the San Francisco Superior Court.

9.    The claims, causes of action, defenses, and affirmative defenses of Flexible Funding Ltd. Liability Co. asserted or assertable against Tijuana Produce, including those in ***Flexible Funding v. Tijuana Produce***, pending under Cause No. CGC-19-576218 in the San Francisco Superior Court.

10.    The claims, causes of action, defenses, and affirmative defenses of Flexible Funding Ltd. Liability Co. asserted or assertable against Tilley HVR, including those in ***Flexible Funding v. Tilley HVR***, pending under Cause No. CGC-19-578523 in the San Francisco Superior Court.

11.    The claims, counter-claims, causes of action, defenses, and affirmative defenses asserted or assertable in ***The Original Mowbray's Tree Service v. Flexible Funding***, pending under Cause No. CGC-21-589522 in the San Francisco Superior Court.

12.    The claims, causes of action, defenses, and affirmative defenses of Instapay Flexible, LLC asserted or assertable against Post 33 Holdings, LLC d/b/a Shop and Save, LLC; Posh Property Solutions, LLC and Tavere Forrest, including those in ***Instapay Flexible, LLC v. Post 33 Holdings, LLC***, pending under Cause No. D-1-GN-21-004301 District Court of Travis County, Texas.

13.    Claims and causes of action of Flexible Funding Ltd. Liability Co. asserted and/or assertable against Graham County Land Company, L.L.C., National Civil, LLC, Randy Jordan, John Pressley, Cecil Patterson and Buck Jackson, including in connection with litigation in the U.S. Bankruptcy Court, Western District of North Carolina, Bryson City Division, Adv. Case No. 21-02000 and litigation pending in *Flexible Funding Ltd. Liability Co. v. Graham County Land Company LLC et. al.*, Graham County Superior Court, File No. 21-CVS-142.

14.    Claims and causes of action of Flexible Funding Ltd. Liability Co. relating to or arising out of transfers between Graham County Land Company, LLC and entities, including but not limited to Carver Contracting, LLC, National Civil LLC, Blue Rock Materials, LLC, Western Materials, LLC, Tar Heel Realty & Development LLC, Jordan Properties – NC, LLC, JH Steel, LLC, Slickrock Development Company, LLC, Snowbird Mountain Trout Company, LLC, and other entities in which Randy Jordan has an interest or controls.

15.    Claims and causes of action of Flexible Funding Ltd. Liability Co. against entities in which Randy Jordan has an interest in or controls.

16.    Claims and causes of action of Flexible Funding Ltd. Liability Co. against accountants, including DLC CPAs, LLC and Anthony P. DeLuca (CPA).

17.     Claims and causes of action of Flexible Funding Ltd. Liability Co. against co-conspirators, aiders and abettors, or other negligent or responsible actors contributing and/or relating to Graham County Land Company, LLC's defalcations, including but not limited to fraudulent transfer claims.

18.     Claims and causes of action of Flexible Funding Ltd. Liability Co. against LSQ Funding Group, LLC arising out of or relating to Canfield Funding LLC, dba Millennium Funding's factoring and security agreement with Engstrom Inc. and causes of action asserted or assertable against Engstrom Inc.

19.     Claim and causes of action of Flexible Funding Ltd. Liability Co. against co-conspirators, aiders and abettors, or other negligent or responsible actors contributing and/or relating to Engstrom Inc. and LSQ Funding Group LLC's conduct, including but not limited to fraudulent transfer claims.

20.     Claims and causes of action of Flexible Funding Ltd. Liability Co. against Bank of America and Ares Management relating to Engstrom Inc.

21.     Claims and causes of action asserted or assertable arising out of the Accounts Receivable Financing Agreement between Flexible Funding Ltd. Liability Co. and Galca Group LLC.

22.     ~~Claim~~Claims and causes of action of Flexible Funding Ltd. Liability Co. against Constructure, Inc. including collection actions.

23.     Claims and causes of action against individuals and/or entities responsible for Flexible Funding Ltd. Liability Co. and/or Instapay Flexible, LLCs' bankruptcy and causing damages to Flexible Funding Ltd. Liability Co. and/or Instapay Flexible, LLC.

24.     Claims and causes of action against pre-petition professionals relating in any way to professional services provided to Flexible Funding Ltd. Liability Co. and Instapay Flexible, LLC.

25.     Claims and causes of action of Flexible Funding Ltd. Liability Co. asserted or assertable against Brandlin and Associates, including collection violations.

26.     Claims and causes of action of Flexible Funding Ltd. Lability Co. or Instapay Flexible, LLC, including collection actions, against borrower customers to the extent provided by loan documents and applicable law.

27.     Claims and causes of action of Flexible Funding Ltd. Liability Co. against Education Works including collection actions.

28.     Rights, interests, claims, and causes of action of Instapay Flexible, LLC arising under or related to the sale of assets by Instapay Flexible, LLC to eCapital Freight Factoring (Holdings) Corp. approved by the Bankruptcy Court by order entered on November 2, 2021, under docket number 167.

29.     Rights, interests, claims, and causes of action of Flexible Funding Ltd. Liability Co. arising under or related to the sale of assets by Flexible Funding Ltd. Liability Co. to eCapital Factoring (Holding) Corp. approved by the Bankruptcy Court by order entered on November 19, 2021, under docket number 198.

30.     Claims and causes of action of Flexible Funding Ltd. Liability Co. against iLink including collection actions.

31.     Claims and causes of action of Flexible Funding Ltd. Liability Co. against KidsEmbrace including collection actions.

32.     Claims and causes of action of Flexible Funding Ltd. Liability Co. against Rite Staff including collection actions.

33.     Claims and causes of action of Claims and causes of Flexible Funding Ltd. Liability Co. against Amazon Ecommerce including collection actions.


Judgments obtained:

Flexible Funding Ltd. Liability Co.:

1.      Aseptic Technologies, LLC, *et al*.
        $782,780.21

2.      Apollo Research Partners, LLC, *et al*.
        $411,838.00

3.      Galca & Jose Guillermo Alcantar
        $1,185,846.79

Instapay Flexible, LLC:

1.      E&L Wholesale LLC and Emer Herera
        $10,915.51

2.      Tammy Trucking, LC and Raheam R. Goolsby

$147,163.48


**Bankruptcy Proofs of Claim of Flexible Funding Ltd. Liability Co.:**

1.  *In re Hill Concrete Structures*
    Bankr. S.D. Cal., Case No. 19-10212
    $843,077.42 Unsecured

2.  *In re Greenlight Staffing Group, Inc.*
    Bankr. S.D. Fl., Case No. 19-20536
    $318,577.41 Secured

3.  *In re West Coast Distribution, Inc.*
    Bankr. S.D. Cal., Case No. 19-20332
    $737,221.93  Unsecured

4.  *In re Country Fresh Holding Co.*
    Bankr. S.D. Tex. 21-30574
    $321,984.05  Unsecured


Except as expressly set forth in the Plan, all causes of action, claims, counterclaims, defenses and rights of offset or recoupment (including but not limited to all Estate Claims, Estate Defenses and Avoidance Actions) belonging to the Debtors shall, upon the occurrence of the Effective Date, be retained by, received by and vested in the Liquidating Debtors for the benefit of the Liquidating Debtors and the Post-Confirmation Estate.

Except as expressly set forth in the Plan the rights of the Liquidating Debtors to commence, prosecute or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date.  No person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtors' Estate or the Liquidating Debtors will not pursue any and all available causes of action (including the Estate Claims, Estate Defenses and Avoidance Actions) against any Person, underlineexcept as otherwise provided in the Plan.

Unless any causes of action against a Person is expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors' Estate expressly reserve all causes of action (including all Estate Claims, Estate Defenses and Avoidance Actions) for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan. Without limiting the foregoing, parties are advised that the Debtors specifically preserve for the Liquidating Debtors any Avoidance Actions it may hold against all parties disclosed in

the Debtors' Schedules or Statement of Financial Affairs, as hereafter amended or
supplemented, as having received any conveyances or transfers from the Debtors.